# SUPREME COURT.

ANDREW J. THOMPSON agt. WILLIAM HICKEY and others.

*Mortgage upon a cemetery lot — When invalid.*

Where a person has taken a conveyance of a burial lot, and has made interments therein of the dead of his family, it is in such condition that it cannot be mortgaged to secure the payment of a debt or the return of money borrowed.

*Special Term, June,* 1880.

THE plaintiff being the owner of a small plot of ground in Greenwood cemetery, in which the bodies of three of his children were buried, borrowed of the defendant Hickey, a small sum of money, and as security for its return gave to Hickey a conveyance of the lot. The defendant Hickey, afterwards, without notice to the plaintiff, conveyed the lot to the defendant Farnham, who subsequently sold and conveyed it to the defendant Clark. The plaintiff was then called upon to remove the bodies of his buried children, with a threat from one of the defendants that if the plaintiff refused, the defendant would.

This action for an injunction and equitable relief was then brought.

*John T. McGowan,* for plaintiff.

*Charles Bradshaw,* for defendant.

VAN VORST, *J.* — The evidence clearly enough shows that the conveyance made by the plaintiff to the defendant Hickey, of the burial plot, was intended as security only for the repayment of the moneys loaned; and although it is absolute in form, it was a mortgage security only, which character it has not lost, and as such it must be considered (*Horn* agt. *Keteltas,* 46 *N. Y.*, 605).

The right of the plaintiff as mortgagor, could not be divested by the private sale made by Hickey to Farnham, and by the latter to Clark (*Lawrence* agt. *The Farmers' Loan & Trust Co.*, 13 *N. Y.*, 200). Neither Hickey nor his immediate grantee could give any better right or interest than they really took. Besides, Clark, when he was asked on the trial as to his knowledge of the original transaction between plaintiff and Hickey, and as to its being a loan of money, replied, "in writing I never heard of it." A fair implication arises from the qualification, that he had otherwise heard of it, and that would be sufficient to put him upon inquiry. Hickey conveyed to Farnham for the nominal consideration of one dollar, and on the same day Farnham conveyed to Clark for the consideration of $225, but Clark held back part of the price until the bodies of the plaintiff's children should be removed. The whole transaction between Hickey and the other defendants wears a suspicious appearance, which the evidence does not remove, and suggests a plan to deprive the plaintiff of the burial plot unjustly and without notice. But I apprehend that there are sufficient reasons in law and equity to prevent the consummation of the wrong.

The Greenwood Cemetery Association was incorporated for the purpose of establishing a burial ground, and for this purpose it was authorized to acquire a tract of land within the limits of the city of Brooklyn. The corporation was authorized to sell the grounds in lots or plots, to be used exclusively as a place of burial of the dead (*See the original act of April* 18, 1839, *and the several acts amending same*). There does not appear in the charter of this corporation, in terms, any absolute restraint upon the power of voluntary alienation of a cemetery lot by an owner. Yet I am persuaded that when a person has taken a conveyance of a burial lot, and has made interments therein of the dead of his family, it is in such condition that it cannot be mortgaged to secure the payment of a debt or the return of money borrowed. Such an act is prohibited by the equity and true spirit of the statute. For,

observe how careful the legislature has been to secure the sleep of the dead from disturbance. The cemetery itself is exempted from public taxation, and the lots or plots of ground, when conveyed, are declared to be exempt from assessment, and cannot be sold on execution, or be applied to the payment of debts under any insolvent law. And as no public road, street or avenue shall be laid out or opened over the land, the same would seem to be absolutely secured against invasion. A mortgage, equally with an execution upon a judgment, might in the end expose the lot for sale. And although the letter of the charter under consideration is not so full, yet the legislature has clearly expressed its mind upon this precise subject in the provisions contained in chapter 133 of the Laws of 1847, entitled "An act authorizing the incorporation of rural cemeteries." By section 11 of that act, it is provided that when plots or lots shall be transferred to individual holders, and after there shall have been an interment in a lot or plot so transferred to individual owners, such lot or plot, from the time of such interment shall be forever thereafter inalienable, and shall, upon the death of the holder or proprietor thereof, descend to the heirs-at-law of such holder or proprietor, and to their heirs-at-law forever; and chapter 310 of the Laws of 1879 declares that it shall not be lawful to mortgage land used for cemetery purposes, or to apply it in payment of debts.

Legislation upon this subject has been in accord with the sentiments of humanity, and with the spirit of our civilization, and has shown a considerate regard for the sanctity of the burial places of the dead. By the incorporation of cemeteries, and their preservation as such, it has secured an immunity from disturbance for the dead which could not be obtained through burials in church-yards, which were liable to be unsettled by the sale of the church property.

When the case of *Lantz* agt. *Buckingham* was before Mr. justice BRADY at special term, he distinctly pronounced against the legality of a mortgage executed upon a cemetery lot by

the proprietor thereof. He says, "regarding it in the light of a mortgage security, I think it is not to be sustained. It is against good morals, and therefore against the policy of the law, to encourage such instruments" (11 *Abb. R.* [*N. S.*], 64). It is true that the judgment of the special term was reversed at the general term (*Lantz* agt. *Buckingham*, 4 *Lans.*, 484). But it is to be borne in mind that in that case no interment had been made in the lot at the time the mortgage was given, and it may be that it might not be considered an offense, either against good morals, public policy, or against the spirit of the statute, to convey or mortgage a cemetery lot before an interment had been actually made therein. For such a sale or conveyance satisfactory reasons might possibly exist. A man might desire to change his lot for one larger or more eligible. I do not regard the act of April 5, 1850, as affecting the question we are now considering. It declares under what circumstances a lot is inalienable. It does not authorize a mortgage or a sale thereunder by implication even.

But that it is an offense against good morals to mortgage a small isolated plot of ground in a cemetery, dedicated exclusively, under the sanctions of the law, as a sanctuary for the dead of one's family, and already consecrated by the ashes of one's kindred, I am sure cannot be well questioned. Such a transaction is clearly a breach of the policy of the statute, is contrary to its equity, and is within the evils it was designed to cure, and our moral nature protests against it. As a consequence of such a transaction, we have here a stranger calling upon a father to disinter his three children, who have been buried for a period of ten years in a cemetery lot, with a threat that if the parent will not, he himself will do it. And suppose he carries his threat into execution, what then? Sepulture must, in the end, be had, and that, it is believed, the statute was intended to secure permanently against disturbance from any such cause as is indicated by the mortgage in question.

The sentiments and feelings which people in a Christian

state have for the dead the law regards and respects, and however it may have been anterior to our legislation on the subject of cemeteries, the dead themselves now have rights which are committed to the living to protect, and in doing which they obtain security for the undisturbed rest of their own remains. In any view which may be taken of this subject I am sure that the defendant should be restrained from interfering with the children's graves. If the conveyance executed by the plaintiff to Hickey, although it be in form absolute, is supposed to confer any present right, it must yield to the easement of the bodies already buried there, which should, in no event, be disturbed (*Morehead* agt. *Richardson*, 22 *Beaven*, 596; *S. C.*, 24 *Beaven*, 33; *First Presbyterian Church* agt. *Second Presbyterian Church*, 2 *Brewster* [*Penn.*], 372).

But, as has been already decided, the conveyance to Hickey was a mortgage security only, and until the plaintiff's rights have been judiciously ended through a proceeding in court, his complete possession and control of the lot cannot be interfered with; and for that reason, also, the threatened acts should be restrained, and a suit in equity is a proper proceeding to secure such restraint.

In *Kurtz* agt. *Beaty and another* (2 *Peters*, 566, 584) judge STORY says: "It is a case where no action at law could afford an adequate and complete remedy. The remedy must be sought, if at all, in the protecting power of a court of chancery, operating by its injunction to preserve the repose of the ashes of the dead and the religious sensibility of the living."

Taking up dead bodies from the place where they have been interred, without authority, is a misdemeanor at common law (*Stephens' Comm.*, vol. 4, 371; *Reg.* agt. *Twiss*, 10 *Best & Smith*, 298; see, also, paper of *Mr. R. S. Guernsey*, read before *N. Y. Medico-Legal Society*, *Feb.* 4, 1880, *on the* "*Law of Burial*").

But, in addition to relief by injunction, I am of opinion that it should be adjudged, for the reasons above stated, that the

transfer made by the plaintiff to Hickey of the cemetery lot as security for a loan of money was, and is, void, and that the subsequent transfers to the other defendants are also void, and that they should severally be delivered up to be canceled, and that the plaintiff's name should be restored to the records of Greenwood cemetery as the owner of the lot.

The loan of money made by Hickey to the plaintiff, it is urged on behalf of the plaintiff, was usurious and void, but the relief granted is not put upon that ground; and if Hickey or his assigns conclude that they have any legal claim for the recovery of the money loaned, they are at liberty to institute and prosecute an action for its recovery, to which the plaintiff, notwithstanding this determination, may interpose any defense he may have.