James C. Lewis, Appellant, *v.* Rachel Walker's Exrs.
James C. Lewis *v.* Rachel Walker's Exrs., Appellants.

*Cemetery lot—Tenants in common—Right of burial—Equity.*

Where four brothers purchase a burial lot, and each takes a one fourth undivided interest therein, and they erect on the lot a monument at their joint expense, and on each side of the monument have inscribed the name of one of the brothers, and set apart the space opposite each name for such brother's family, no one of the brothers can permit the interment in his portion of the common lot of any person not a member of the family without the consent of the other joint owners.

In such a case if the executors of the widow of one of the brothers cut off the raised letters on one face of the monument, leaving a smooth, level surface, a court of equity will not require an entirely new monument to be erected at the expense of the widow's estate.

Argued Nov. 1, 1894. Appeals, Nos. 201 and 222, Oct. T., 1894, by plaintiff and defendants, from decree of C. P. No. 2, Allegheny Co., July T., 1892, No. 130, on bill in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill for injunction to restrain exercise of acts of ownership in and upon burial lot.

The case was referred to William P. Schell, Jr., Esq., as master, who recommended a decree in accordance with the prayers of the bill, restraining defendants from interfering with the lot, and also directing that defendants should erect a new monument in place of the marble one which one of the defendants had defaced. The defacement consisted in cutting off the name "Lewis" from a shield on the main shaft—leaving three shields on the three remaining sides with similar inscriptions—and the word "George" from the base, and cutting in the name "Walker."

Both plaintiff and defendants filed exceptions to the master's report. These were disposed of by the court, in the following opinion by WHITE, J., in which the facts appear:

"The deed from the cemetery company, of March 19, 1856, to George Lewis, Henry H. Lewis, Lewis W. Lewis and James C. Lewis, 'to them, their heirs and assigns forever,' conveyed a

fee simple title ; to each the one fourth undivided interest. But under the act of assembly incorporating the company, with the rules of the company included in the deed and made conditions of the conveyance, the use of the lot was limited solely for burial purposes.

" That the lot was purchased as a family burial lot for the Lewis families is manifest from the deed, and the subsequent arrangement by the brothers. A monument was erected, at the joint expense, in the center of the lot, the four sides facing the four corners, and each side inscribed with the name of one of the brothers. The corner space opposite the name was set apart as a burial place for that family. The father and mother were buried at the two opposite corners of the monument, thus placing them partly in each of the four divisions, and clearly indicating the family character of the entire lot. They were parental ties binding together the four families.

" The arrangement did not make a parol partition of the lot. It did not affect the title or the uses for which the lot was purchased and dedicated. The title still remained in the four brothers as the joint owners of the entire lot. It was still the family burial lot.

" The owner of a burial lot may doubtless permit the interment of any relative, or even a stranger, in his lot. No rule or regulation of the company has been referred to which prohibits that. But in the case of two or more joint owners, no one has that right; it would require the consent of all. Neither George Lewis therefore, nor his widow, had any right to authorize the interment in their portion of the common lot of any person not a member of the Lewis family, without the consent of the other joint owners.

" After the death of George Lewis, his widow, in 1866, buried her mother, Eliza Walker, in the George Lewis corner of the lot, and in 1872, buried her sister, Jane Walker, in the same portion. It does not appear that any objection was made to their interments at the time, or at any time until after the widow and children conveyed their interest in the common lot in 1890. On these facts it is fairly to be inferred that the other joint owners consented to their interments, or at least had no objections to them. After the lapse of these years, it is too late to raise that objection.

" Whether the widow of George Lewis, after she purchased another lot, had the right, as widow, to remove the bodies of her husband and children, is not material in this case. It did not in any way affect the rights or interests of the other joint owners.

" The release or quitclaim deed of the widow and children of George Lewis to Miss Rachel Walker, of October 23, 1890, conveyed ' All their undivided interest of, in and to lot No. 52, section No. 21, Allegheny Cemetery.' It was not a conveyance of any part of the lot, but an undivided one fourth interest in the whole lot. Doubtless, she took the legal title to the undivided one fourth. But she took a legal title, subject to all the trusts and conditions attached to the lot. It was a burial lot of the Lewis families. She had no right to bury any person there, not of the Lewis family, without the consent of the other joint owners. She did not bury any person there after the date of the deed. But she died in July, 1893, after the original bill in this case was served upon her, and her executors, W. W. Lewis and Thomas Carothers, buried her there, and subsequently put up the tombstones. And this was done after express notice to them not to do so ; for which the supplemental bill was filed.

" The master finds that the defacement of the central monument — cutting off of raised letters — was done by Rachel Walker or at her instance. We do not think this finding is sustained by the evidence. Miss Walker, in her answer, expressly denies it. W. W. Lewis, in his testimony, said that he did it, and that Miss Walker had nothing to do with it. The only evidence to the contrary is the testimony of W. A. Lewis and C. L. Lewis, who said they visited the premises in October, 1891, when they did not see any defacement, and believe nothing of the kind had then taken place. This was after the date when W. W. Lewis said he did it. The master thinks W. W. Lewis must be mistaken as to the date, and it was done after W. A. and C. L. Lewis had inspected it. This we do not consider sufficient evidence to overcome the responsive answer of Miss Walker, and the positive testimony of W. W. Lewis.

" The defacement complained of—simply the cutting off the raised letters—is hardly such a defacement as requires a new monument. Nothing was done to those sides facing the graves of the other three families. On this side, the George Lewis

side, cutting off the raised letters simply leaves a smooth, level surface. But in any event Miss Walker is not responsible for it. W. W. Lewis is responsible for it. Whether he did right or wrong in doing it, this is not maintained in this case. It was done by him personally, and not as executor, and before he was a party to this proceeding. If he did so wrongfully, it was a trespass for which he is answerable.

" An injunction should be granted restraining the defendants, who are claiming title from Rachel Walker, from future interments in said lot, or erecting any tombstone or otherwise interfering with the lot, without the consent of the other joint owners. And that the executors of Rachel Walker, W. W. Lewis and Thomas Carothers, be required to remove the bodies interred since October, 1890, and all tombstones, etc., erected since that date.

" All exceptions to the master's report in harmony with the views expressed in this opinion are sustained, and all others overruled."

*Error assigned* by plaintiff was refusal of court to decree erection of new monument.

*Error assigned* by defendants was refusal to dismiss bill.

*John D. Shafer,* for plaintiff, cited: Stewart's Ap., 81* Pa. 323; Davidson v. Reed, 111 Ill. 167; Funk v. Halderman, 53 Pa. 243; Hancock v. McAvoy, 151 Pa. 460; Penna. Lead Co.'s Ap., 96 Pa. 124; Denny v. Brunson, 29 Pa. 384; Beatty v. Kurtz, 2 Peters, 566; Ebert v. Wood, 1 Bin. 216; McKnight v. Bell, 135 Pa. 358.

*W. B. Rogers, J. H. Beal* with him, for defendants, cited: McArthur v. Scott, 113 U. S. 340; City v. R. R., 133 Pa. 134; Coy v. Mason, 17 How. 580; McKnight v. Bell, 135 Pa. 358; Coal Co. v. Snowden, 42 Pa. 488; Duncan v. Iron Works, 136 Pa. 487; Grubb's Ap., 90 Pa. 28; Barclay's Ap., 93 Pa. 50; Mowday v. Moore, 133 Pa. 598; Cemetery Co. v. Bancroft, 161 Pa. 197.

PER CURIAM, Nov. 12, 1894:

After a very patient examination of this case we are con-

vinced that the opinion of the learned court below accomplishes absolute justice between these litigant parties and on that opinion we affirm the decree.

The decree of the court below is affirmed and appeal dismissed at the cost of the appellant.