PETITION OF EMELINE A. WALDRON *et al.* FOR AN OPINION.

PROVIDENCE—MARCH 30, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Wills. Burial Lots. Residuary Devise.*

Testator, the owner of a burial lot, deceased, leaving a will in which his widow was his residuary legatee. The will made no mention of the lot. Upon the question whether it passed to the widow under the residuary clause or to his daughter, as heir-at-law:—

*Held,* that a burial lot had been shorn of so many of the ordinary attributes of property as to raise the presumption that it was not intended to be passed under a general devise in which it was not specially mentioned.

*Held,* further, that, following the doctrine of *Derby* v. *Derby,* 4 R. I. 414, and the implied approval of it in *Gardner* v. *Swan Point,* 20 R. I. 646, a burial lot does not pass under a general residuary devise but descends to the heirs as intestate property.

PETITION for an opinion.

STINESS, C. J. Horatio L. Waldron was the owner of a burial lot in Swan Point Cemetery. He died in 1901, leaving a will, in which Emeline A. Waldron, his widow, was his residuary legatee. The will made no mention of the burial lot, and the question is whether it passed to the widow under the residuary clause, or to his daughter as his heir at law.

"The Proprietors of the Swan Point Cemetery" is a corporation for the purpose of maintaining the cemetery grounds, which held title to the land in fee simple. It conveyed a lot, by deed, to Horatio L. Waldron, his heirs and assigns, limiting the use to sepulture of the dead, and to the rules of the cor-

poration. Two previous wives and a child of Mr. Waldron were buried in the lot before his death.

Similar conditions existed in *Gardner* v. *Swan Point*, 20 R. I. 646, where a widow claimed title to a burial lot as residuary legatee. The court said: "In the cases of church-yards and cemeteries, it has been held that, though a deed may run to a grantee, his heirs and assigns, he takes only an easement or right of burial, rather than an absolute title." (Citing cases.) "So long as the land is used for burial purposes he can not exercise the same rights of ownership as in other real estate."

The court did not decide the question of title in that case. The question was not one of title to the lot, but of a right to change the place of a body already buried, as between a widow and the next of kin of the testator, to whom she had conveyed the lot. Cases bearing upon title were cited to show how the right of control of the body would devolve, as a general rule.

A question of title came before this court in *Derby* v. *Derby*, 4 R. I. 414. In that case the executor was empowered to sell all the real estate to pay pecuniary and residuary legacies, and the question arose whether he should sell a burial lot in a cemetery, where the testator's first wife was buried. The court said: "This lot was purchased by the testator for a burial place for his family. That he should deliberately intend that it should be sold and go into the hands of strangers, it is difficult to believe, without the most express direction. It is the more difficult in this case, as within it are deposited the remains of his former wife; and could he intend that those remains should be disturbed?

"He had devoted this lot to pious and charitable uses, as a place of burial for the members of his own family! Did he mean to revoke it? . . . It could not have been in the contemplation of the testator that this lot should be sold out of his family, nor could he have contemplated it as property in any such sense as to fall within the power given to the executor; and without an express direction to sell this particular lot, we think we shall not be warranted in advising the executor to sell it."

These remarks apply with equal force to the case at bar.

Although this devise was to.his widow, yet, as there were no children of her marriage, the lot, if devised, would go out of his family to her heirs. His living daughter would have no right to be buried in the family lot. It seems improbable that he should have intended such a result, or that he meant to devise to his widow and her heirs a lot which contained the remains of his two previous wives and his children.

It is also improbable that one has in mind a burial lot in a residuary devise. Men are not likely to inventory it among their assets or to regard it as property to be passed by a will. It is essentially a family heritage.

It has been held, on grounds of public policy, that a burial lot, where bodies have been buried, can not be mortgaged for debts; *Thompson* v. *Hickey*, 59 How. Pr. (N. Y.) 434; and that a deed of it carries only a right to use it for burial purposes; *Buffalo Cemetery* v. *City*, 46 N. Y. 503. The charter of the cemetery provides that the land shall not be taxed, and a recent amendment to the charter also provides that it shall not pass by will except to the corporation.

(1) While we do not mean to say that a burial lot is not property, yet all of these limitations tend to show that it has been shorn of so many of the ordinary attributes of property as to raise the presumption that it is not intended to be passed under a general devise in which it is not specially mentioned.

A strong reason for this is found in the right to the control of the corpse, as between a widow and next of kin, as shown in *Pierce* v. *Swan Point*, 10 R. I. 227, and *Hackett* v. *Hackett*, 18 R. I. 155.

The right of custody of the remains and the right of property in the burial lot should go together where it is possible.

Following the doctrine of *Derby* v. *Derby*, 4 R. I. 414, and the implied approval of it in *Gardner* v. *Swan Point*, 20 R. I. 646, a burial lot does not pass under a general residuary devise, but it descends to the heirs as intestate property. It is a family burial lot. It is that fact alone which gives a peculiar limitation to its tenure. The heir takes it subject to all the conditions for which the ancestor held it. A sort of trust attaches to the land for the benefit of the family. Neither

the widow nor the child can be excluded from it for want of title, yet such a result might follow if the tenure was like that of other real estate. Children could exclude a widow or a widow could exclude children by virtue of ownership of the land.

The view, therefore, taken in *Derby* v. *Derby, supra,* was founded in sound reason and policy, and it has been regarded as the law in this State for a long time. It did not quite touch the point involved here, because the question was whether the lot should be *sold* to pay debts or legacies.

Still we do not hesitate to follow its doctrine, and accordingly our opinion is that the burial lot did not pass by the residuary clause of the will of Horatio L. Waldron, but descended to his daughter, Hattie L. Peirce.