LAY et al. v. CARTER et al.

(Supreme Court, Equity Term, Seneca County.    February 27, 1915.)

1. CEMETERIES (§ 15*)—FAMILY CEMETERIES—ACTION—PARTIES.
      Any one or more of the members of a family who were interested in rights the family had acquired in land as a family cemetery could maintain an action to restrain interference therewith.
      [Ed. Note.—For other cases, see Cemeteries, Cent. Dig. §§ 16–18; Dec. Dig. § 15.*]

2. DEDICATION (§ 20*)—FAMILY CEMETERIES.
      Where a family used part of a lot of land for burial purposes for more than 75 years with no record title, the record owners, who knew of such user and by silence consented to it, would be deemed to have dedicated so much of the lot as was actually used for burial purposes for a cemetery.
      [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 17–30; Dec. Dig. § 20.*]

Action by Hiram Lay and others against Eleazer Carter and the Town of Seneca Falls to restrain defendant Carter from interfering with the fence or any portion of a family cemetery.    Judgment establishing boundaries.

Daniel Moran, of Seneca Falls, for plaintiffs.
MacDonald Bros., of Seneca Falls, for defendant Carter.
William H. Hurley, of Seneca Falls, for defendant town of Seneca Falls.

CLARK, J.   For nearly a century there has existed and been in common use for burial purposes a cemetery located on the south side of Washington street in the village of Bridgeport, formerly West Cay-

uga, Seneca county, N. Y. This cemetery occupied lots No. 41 and 42 on a map called the "Annin Map," which was made about 1801. Just south of and adjoining this cemetery is lot No. 40, and a portion of it has been used as a burying ground by members of the Lay family for a period exceeding 75 years. The cemetery first mentioned was commonly called the "Bridgeport Cemetery," while the burying ground on lot 40, being occupied as a burial place for members of the Lay family, was commonly known as the "Lay Cemetery." The Bridgeport Cemetery was never incorporated, and there is no evidence that any person or corporation has the record title to said cemetery. Likewise neither the plaintiffs nor any of their ancestors has a record title to lot No. 40, or any part thereof; but the Lay family has used, without objection from any source, portions of said lot No. 40 as a place for the burial of their dead.

The defendant owns the lot next south of the Lay Cemetery, which he purchased in 1910, from members of the Hendricks family, who formerly owned it. The town of Seneca Falls has never exercised any care or control over any of this property, either the Bridgeport Cemetery proper, or the Lay Cemetery.

The plaintiffs, desiring to have a permanent fence between the Lay Cemetery and defendants' land adjoining it on the south, undertook to erect a fence on what they supposed was the line. A dispute arose between them and defendant Carter as to the location of the true line, and he removed the fence plaintiffs had constructed to a position a few feet north; he claiming that that was the true line. Plaintiffs disputed that, and replaced the fence where they had originally erected it. Defendant again removed it, and plaintiffs bring this action, among other things, to restrain defendant Carter from interfering with the fence or any portion of the Lay Cemetery.

[1] Under the circumstances as established by the evidence, I have no doubt that plaintiffs had a right to bring this action, and it was not necessary that every member of the Lay family should be made parties thereto. Any one, or more, of the members of the Lay family, who were interested in any rights the family had acquired in the cemetery, could undoubtedly maintain an action to restrain any interference with their rights in said property. Mitchell v. Thorne, 134 N. Y. 536, 32 N. E. 10, 30 Am. St. Rep. 699.

Defendant Carter claims to own the whole of lot No. 40 under record title beginning back as far as 1855, when by deed dated September 25, 1855, Sally Dickens conveyed lot No. 40 to one Silas Beardsley, under the following description:

"Being all that piece or parcel of land which is known and distinguished on a map of West Cayuga village and is filed in said county clerk's office, it being lot No. 40, beginning in the road running south from West Cayuga at the southwest corner of the graveyard; thence east to the lake; thence up the lake shore so far as where the fence now is; thence west to the road; thence north to the place of beginning."

It is plain from this description that the starting point was in the southwest corner of the Bridgeport Cemetery proper, which lies just north of the so-called Lay Cemetery. It is equally clear that it was the intention of the parties to that conveyance that the line between

lots 40 and 41 should extend from the highway on the west easterly to the shores of Cayuga Lake, and then it should follow the lake shore in a southerly direction to a point where a fence then stood, and thence westerly to the highway.

The description in this deed was substantially followed right down through various deeds to and including the one under which defendant claims to hold title to lot No. 40, which was made by the heirs of Mary A. Hendricks, former owner of said property, February 4, 1910. Thus it appears that defendant Carter is the record owner of the title of lot No. 40, subject, however, to any rights the plaintiffs, or their ancestors, may have acquired because of unopposed occupancy of a portion of lot No. 40, for burial purposes, for a period of more than 75 years.

There is no evidence that the plaintiffs or their ancestors have ever had any record title, or title by any written instrument, to any portion of lot No. 40, and their rights therein rest exclusively upon the fact that they and their ancestors have used portions of said lot for burial purposes, with the knowledge of owners of the adjoining land on the south, for many years, without the slightest objection having been raised to such use and occupancy.

[2] Under these circumstances plaintiffs and their ancestors are entitled to hold the portions of lot No. 40, which were suitable and were used for burial purposes, because the owners of the adjoining property who knew of such user, and who by their silence consented to it, would be deemed to have dedicated so much of lot 40 as was actually used for burial purposes, for a cemetery. But whatever rights plaintiffs may have in lot No. 40 being based exclusively upon their and their ancestors' occupancy thereof, and they having no written or record title to any portion of said lot, I do not think that their rights in lot No. 40 would extend beyond that portion of said lot which was suitable and had been used for burial purposes, and consequently they cannot hold from the crest of the hill to the lake shore.

One of the principal purposes of this litigation, as I understand it, is to get a correct location of the south line of the so-called Lay Cemetery, and I think that the evidence would justify the finding that it should start at the highway, at the point adopted by plaintiffs when they erected the fence in question, proceeding thence easterly on a course south 76 degrees 19 minutes east in a straight line about 130 feet to the brow of the hill; thence northerly on a line parallel with the lake road, or Washington street, to the south line of lot No. 41, following as nearly as may be the brow of the hill. The evidence shows that the portion of lot No. 40 lying between the crest of the hill and the lake shore is so steep that it could not be used for burial purposes, and it has never been used for such purposes, and plaintiffs, having no record or written title to any portion of lot No. 40, are surely in no position to claim any portion thereof, excepting so much as has been used by them and their ancestors for burial purposes, or which could be used for such purposes.

Judgment is therefore directed, establishing the south and east lines of the so-called Lay Cemetery on the lines as herein indicated, and the defendant Carter is enjoined from in any way interfering with

any fence or fences which may be erected by plaintiffs on said lines, or the graves and monuments in the Lay Cemetery, so called, lying within the lines hereinbefore indicated, and plaintiffs are likewise restrained from interfering with defendant Carter's use and occupancy of portions of lot No. 40 lying easterly of the east line of the Lay Cemetery, to be run out on the lines as hereinbefore indicated.

Under the circumstances as disclosed in this case, no costs are allowed to either party as against the other party.