GEORGE CLARKE, Plaintiff, v. IRENE VIRGINIA KEATING et al., Defendants.

(Supreme Court, Westchester Special Term, January, 1918.)

Partition — when action will not lie for — sale of land containing burial plot — easements.

An action will not lie for the partition and sale of land containing a burial plot free and clear of the right of burial therein of persons entitled thereto, against their protest.

ACTION for partition.

Meighan & Necarsulmer, for plaintiff.

Eben H. P. Squire, for defendant.

YOUNG, J. This is an action for partition. It appears from the allegations of the complaint, which are all admitted, and from the evidence that the plaintiff and the defendant Keating are tenants in common of a parcel of land in Harrison, known as the Purdy Burying Ground. This parcel of land was formerly

owned by one Caleb Purdy, who died April 7, 1791, leaving a will which was probated April 15, 1794. He devised to his son, Silvanus Purdy, a parcel of land known as lot No. 3 in fee " reserving at the same time a privilege to my family forever of going to and from a burying place in lot No. 3, through the same and burying their dead there if they incline so to do." This burial plot is the parcel sought to be partitioned in this action. The family of Caleb Purdy exercised their right of burial in this plot until 1907, since which time no interments have been made therein. The plot became neglected and overgrown and no care of any kind was given to it. In March, 1917, the plaintiff caused all human remains together with monuments in the Purdy Burying Ground to be removed to a new plot purchased by him situate in Greenwood Union Cemetery, in the town of Rye. This reinterment was done with the consent and acquiescence of some of the members of the Purdy family. The descendants of Caleb Purdy, however, are very numerous and are widely scattered over the country. There are perhaps, as stated by plaintiff's counsel, roughly speaking, one thousand people who have such rights of burial as members of the Purdy family.

It is sought in this action to sell this burial plot free and clear of the right of burial in the members of the Purdy family. Answers have been interposed by certain defendants and the right to make such a sale contested upon the ground that the members of the family cannot be thus deprived of their right. The right of burial has always been considered a sacred one, and any attempt to interfere with such right or to disturb the remains of the dead has been the subject of cognizance in courts of equity at the instance of members of the family of the deceased.

Thus in *Hunter* v. *Trustees of Sandy Hill,* 6 Hill, 407,

the action was brought to recover land known as " the old burying ground," and its use as a burying ground was proved. The court held that a dedication of land to the inhabitants of a town for a burying ground was valid and precluded the owner from exercising his former rights over it, and that, where lands thus dedicated had been so occupied for thirty-six years, the act of the trustees in opening a highway across it, which was travelled for ten years, and then discontinued, did not affect the public right under the dedication. It was held that the plaintiff could not recover in ejectment, the court saying: " What right, if any, may hereafter arise in favor of those who can make title from the original owners, it is not necessary now to inquire. The land is still a public grave yard, enclosed, known, and recognized as such. When these graves shall have worn away; when they who now weep over them shall have found kindred resting places for themselves; when nothing shall remain to distinguish this spot from the common earth around, and it shall be wholly unknown as a grave yard; it may be that some one who can establish a good ' paper title,' will have a right to its possession; for it will then have lost its identity as a burial ground, and with that, all right founded on the dedication must necessarily become extinct."

In *Mitchell* v. *Thorne,* 134 N. Y. 536, it was held that the heirs of a decedent at whose grave a monument has been erected, or the person who rightfully erected it, can recover damages from one who wrongfully injures or removes it, or, by an injunction, may restrain one who, without right, threatens to injure or remove it, although title to the ground is in another. It appeared that the father of the plaintiffs, with his brothers and sisters, owned as tenants in common a farm upon which was a cemetery plot wherein the

ancestors and collateral relatives of the plaintiffs had been buried in graves marked by mounds and memorial stones; that the tenants in common conveyed the farm, excepting and reserving the right of interment in said plot and also a right of way to the same to the grantors of this deed, and to their heir or heirs forever; that plaintiffs' father and all the grantors in the deed are now deceased and the easement or right of family interment or burial reserved in the land has descended to plaintiffs as heirs at law of the grantors; that defendant was the owner and in possession of the land, subject to said reservation, and that she had removed part of the fence inclosing the burial plot, destroyed some of the gravestones, graded away the mounds of the graves, and obliterated all traces of them, and refused plaintiffs a right of way to and from said plot, and threatened, by grading and leveling it, to destroy said burial place. It was held that a demurrer to the complaint as not stating facts constituting a cause of action could not be sustained. In that case the court said: "It is recited that ground had then been laid off for interments, and a right of way to and from this ground, with the right to bury therein, is 'excepted' and 'reserved' to the grantors and their heirs forever. The right to bury carries with it the right to do so according to the usual custom in the neighborhood, and undoubtedly includes the right of making mounds over and erecting stones and monuments at the graves. The right to make such erections would carry with it the right to protect them from spoliation. The language assumes the existence of a burial ground, and the grantors had the right to protect the graves and monuments which existed at the date of the grant, or which were made during their lives, and their heirs, having succeeded to their rights, may protect the graves and monuments now existing."

Also in *Schroder* v. *Wanzor,* 36 Hun, 423, it was held that where a lot in Greenwood Cemetery had been purchased by plaintiff's husband, to be used as a place for the burial of the plaintiff and her husband and their family, and had been improved, and plaintiff's parents and one of her sons and a brother of the husband had been buried therein, and the husband thereafter, for a valuable consideration, sold and conveyed the lot to a stranger, that the wife could maintain an action to restrain the husband from so conveying the lot and was entitled to have a judgment entered therein specifically devoting the lot to the objects for which it had been purchased and improved, the court saying " that it would be offensive to the moral sense, and, therefore, should not be sanctioned by the court after these bodies had there been buried, to permit this property to be made the subject of speculative disposition, with permission to the purchaser to remove them from their resting place. Such an interference with them was not sanctioned by the common law."

In *Lay* v. *Carter,* 151 N. Y. Supp. 1081, it was held that any one or more of the members of a family who were interested in rights the family had acquired in land as a family cemetery could maintain an action to restrain interference therewith, and that where a family used part of a lot of land for burial purposes for more than seventy-five years with no record title, the record owners, who knew of such user and by silence consented to it, would be deemed to have dedicated so much of the lot as was actually used for burial purposes for a cemetery.

In *Thompson* v. *Hickey,* 8 Abb. N. C. 159, it was held that the owner of a lot in Greenwood Cemetery cannot mortgage it after he has interred the dead of his family therein, and that the mortgagor may main-

tain an action to prevent the mortgagee of such a lot from interfering with the bodies interred therein.

It is true that the Purdy Burying Ground has not been used for burial purposes for a number of years. It is also true that all the remains of the dead have been removed and re-interred in the Greenwood Union Cemetery at Rye. It is quite likely also that the burying ground may never again be actually used for burial purposes, but I cannot see that this affects the legal right of the answering defendants to the easement of burial reserved to the members of the Purdy family in the devise made by Caleb Purdy's will. It seems to me that that right is one which a court of equity is bound to protect, if asserted. It cannot be said that the use of the land in question for burial purposes has been abandoned simply because it has not been so used for some years and the bodies have now been removed.

There does not seem to be any direct authority in this state involving the question of partition of a burial ground, but in Pennsylvania where two religious corporations had as co-tenants procured and held land on part of which they had erected a church and the remainder they used as a cemetery, the court refused to divide the property into parcels or put it up for sale and denied partition on the ground that it would outrage the public sense of propriety and decency. *Brown* v. *Lutheran Church,* 23 Penn. St. 495.

I do not think the sections of the Code referred to by plaintiff's counsel permitting the court to decree the sale of lands sought to be partitioned free from incumbrances applies in a case of this character. I do not think that the legislature intended to include easements of this kind among the incumbrances which might be cut off by a decree in partition.

Furthermore, the mere fact that the neighborhood has changed from a farm to a residential section cannot alter the rights of the Purdy family in this burying ground. It is true that the public authorities may for sanitary reasons compel the discontinuance of a burial ground and compel the removal of the remains interred therein, but I know of no case where, for mere commercial reasons and because the existence of the burying ground is a detriment to the surrounding property and injures its value, it has been held that parties holding mere private interests in the land might compel the discontinuance of the burial ground as against those having and asserting rights of burial therein, either by the mere act of the removal of the bodies or by any legal proceeding.

If partition can be maintained in this case, it is equally applicable to any private burial ground, the fee of which is held by tenants in common, whether presently used as such or otherwise. I do not think that the courts can determine as against rights asserted by those entitled to use the burial ground for burial purposes just when or under what circumstances an abandonment is shown. This burial easement is clearly a matter of right and does not rest in the discretion of a court of equity. If the right remains and is asserted, there can be no abandonment.

I conclude therefore that this court has no power to direct the sale of these lands free from the easement of burial. While the plaintiff may have partition, or a sale if that cannot be done without prejudice, such partition or sale must be subject to the right of burial vested in the members of the Purdy family.

Ordered accordingly.