**PERSINGER, Plaintiff, v. PERSINGER, et, Defendants.**

Common Pleas Court, Fayette County.

No. 20505.   Decided May 17, 1949.

BELL, J., sitting in Fayette County by designation of the Chief Justice.

Ray R. Maddox, W. S. Paxson, Washington, C. H., for plaintiff.
Bush & Rankin, Washington, C. H., for defendants.

## OPINION

By BELL, J.

On November 18, 1898, the defendant Washington Cemetery Association conveyed to John L. Persinger, his heirs and assigns, the right to use and occupy for the purpose of sepulture, lot number 46 in section five of the cemetery maintained by said association. John L. Persinger, his wife, and three of their children are buried on this lot. The plaintiff, Carey Persinger, and the defendants, Jesse Persinger and Emma Pugsley, are the only remaining living children of John L. Persinger. There are three grave spaces remaining on the lot.

Carey Persinger, a widower, desiring at his death to be buried on the lot and desiring before his death to erect a headstone to mark the grave space where he will be buried, arranged with a monument dealer to erect such headstone. The trustees of defendant Cemetery Association, acting on the demand of defendant Jesse Persinger, ordered said monument dealer not to erect the marker. Plaintiff brings this action in declaratory judgment to determine his right to erect a marker on the lot and to be buried thereon after his death.

The defendant Emma Pugsley entered her appearance, joined in the prayer of the petition and consented to the relief prayed for therein.

The defendant Jesse Persinger demurred to plaintiff's petition on the ground that it did not state a cause of action and that there is a defect of parties defendant. The matter was submitted on the argument and memoranda of counsel.

It is contended by counsel for defendant that the petition does not state a cause of action because it is apparent therefrom that plaintiff is but one of several joint owners of a burial lot and that one of his co-owners has refused his consent to the burial or defacement of the lot by plaintiff. If it be considered that the petition state a cause of action, it is contended that the petition is defective because all persons necessary to a determination of the issue are not parties defendant.

This demurrer raises two questions which, in the ultimate, are determinative of the controversy between the parties. (1) What are the rights, so far as burial is concerned, of a tenant in common of a cemetery lot? (2) In an action to determine those rights, who are necessary parties?

Although the questions involved here have been raised in other jurisdictions, they are apparently of first impression in Ohio. No Ohio cases in point have been found by the Court and none have been cited by counsel.

Were we dealing here with property, realty, in the ordinary sense, property that can be bought and sold, encumbered, partitioned and devised without restriction, the questions raised herein would be easy of resolution. But we are not. Here we have a plot of ground, the like of which has for centuries been held apart, consigned a character different from that of other land. All civilized nations, and many barbarous ones, have since time began regarded in some measure, at least, the place where the dead are deposited as consecrated ground. In the old Saxon tongue, the burial ground of the dead was "God's Acre."

Although we know that the earthly body of man together with the adjuncts that surround it when laid in the grave is consigned to the dust from which it springs—although these remains "have said to corruption, thou art my father, to the worm, thou art my mother and my sister"—yet from the dawn of history man has learned to expect, and in most instances has received, a decent burial. Moses, in describing the curse of disobedience, instructed his people that one of the greatest curses would be that "thy carcase shall be meat unto all fowls of the air, and unto the beasts of the earth, and no man shall fray them away." And on at least four occasions the prophet Jeremiah described the lack of burial as one of the greatest calamities that could befall the Hebrew people.

This right to decent burial is one that has been guarded by the law. Because, however, from early Roman days until comparatively recently, such matters were under the control of ecclesiastical courts, the rules of law pertaining thereto have been the result of gradual development. But from this development a few well established rules have evolved. All courts now concur in holding that the right of possession of a dead body for the purposes of burial belongs to those most intimately and closely connected with the deceased by domestic ties. And the authorities are equally conclusive that the last resting place of the dead, when in actual or constructive possession of a relative, will be protected from desecration at his instance. And this right will be protected at the instance of

one of several relatives, owners in common, without the joinder of the others. Anderson v. Acheson, 110 N. W. 335; Wright v. Hollywood Cemetery Corp., 38 S. E. 94. The Iowa joinder statute considered in the Anderson case, a statute almost identical with that of Ohio, reads: "Persons having a united interest must be joined on the same side . . . but when some one who should be made plaintiffs refuse to join, they may be made defendants."

A burial lot is generally regarded as property in which title may descend to heirs. Field v. City of Providence, 24 A. 143; In re Waldron, 58 A. 453; Paxton v. Bloomington Cemetery Corp., 187 N. E. 455; Brown v. Hill, 119 N. E. 977; McWhirter v. Newell, 66 N. E. 345; Hook v. Joyce, 22 S. W. 651; Jacobus v. Congregation of Children of Israel, 33 S. E. 853; Wright v. Hollywood Cemetery Corp., supra. Yet it is evident from most of these cases, and others, that the tenure generally is not like that of ordinary real estate. In most cases, though a deed may run to a grantee, his heirs and assigns, he takes only an easement or a right of burial, rather than an absolute title. Sohier v. Trinity Church, 109 Mass. 1; Went v. Methodist Church; 30 N. Y. S. 157; dictum in **Fraser v. Lee, 8 Oh Ap 235.** So long as the land is used for burial purposes, the holder of such a deed cannot exercise the same rights of ownership as in other real estate. Thus in Thompson v. Hickey, 59 How. Prac. 434, it was held that a burial lot could not be mortgaged. And in Derby v. Derby, 4 R. I. 414, it was held that it did not fall within a power of sale given to an executor for the payment of debts and legacies, but that it passed to the heir at law of the testator. Similarly, it has been held that a burial lot does not pass under a general residuary clause in a will but descends to the heirs as intestate property. In re Waldron, supra.

In spite of the fact that Massachusetts courts have held that only an easement or license passes under a cemetery deed, in one case, at least, the court held that that easement or license was no different, so far as the rights of the owners were concerned, from any other interest in real estate. A Massachusetts statute, which would be most beneficial in cases such as this, provides that in certain cemeteries if owners in common do not agree on control of the lot, the proper officials of the cemterey shall designate which of the heirs shall control it.

Plaintiff, in the case of Capen v. Leach, 65 N. E. 63 (Mass.), was one of four heirs at law who were tenants in common of a burial lot in the town of Hampden. Plaintiff erected a

monument on one corner of the lot and defendants removed it. The trial court sustained a demurrer to plaintiff's petition for damages. On review, the court said:

"If the lot was not governed by the statute cited, the plaintiff and the defendants are merely tenants in common. The placing upon the lot of a granite monument was an exclusive appropriation of a part of the land to her own use, which the defendants could treat as an ouster, and they might remove the structure from the common land. As the bill shows no right in the plaintiff to place or keep a monument on the lot, the demurrer was sustained rightly."

Were the Capen case standing alone in the field, this Court would feel more constrained to follow it. It is, however, inconsistent with the holdings in many other jurisdictions.

In Paxton v. Bloomington Cemetery Corp., 187 N. E. 455 (Ill.), the court held that the sale of a lot in a public cemetery does not pass the title in fee, but assures to the grantee an easement for burial purposes so long as the ground is used for a cemetery, and **this easement passes to the grantee's family at his death.**

In another Illinois case, McWhirter v. Newell, 66 N. E. 345, the court said:

"As it is a public cemetery, the sale of lots therein does not pass to the grantees the title in fee to such lots, but thereby assures to the grantee a license or easement therein for burial purposes, so long as the cemetery shall be used for cemetery purposes. This license or easement becomes the property of the **family** of the original grantee of the lot upon his or her decease." (Emphasis ours.)

In the Georgia case of Wright v. Hollywood Cemetery Corp., supra, one Annie Carlton had purchased a lot from the defendant cemetery corporation "for a burial place for herself, her children, and the members of her family", and received a deed of conveyance to the same. Some years after the death of Annie Carlton, her daughter, Ludie Carlton, died and preparations were made by her grandmother and brother, the plaintiffs, for burial on the lot. Upon arriving at the cemetery after the funeral, defendant denied plaintiffs the right of interment. In reversing a judgment for defendant, the court said:

"Upon her death (i. e. Annie Carlton) the title to the same descended to her children as her heirs at law. Ludie Carlton,

at the time of her death, as one of these heirs at law, **owned an undivided interest in this lot, and the right of sepulture therein.** Therefore whoever had the right to bury her remains had the right to inter them in this lot." (Emphasis ours.)

In the case of Robertson v. Mt. Olivet Cemetery Co., 93 S. W. 574 (Tenn.), a lot was purchased by the Executor of deceased who was buried on the lot. A number of his children and grandchildren and his widow were buried there. In a controversy between step-children who claimed to inherit from their mother and other children of the deceased, the court said:

"The lot was purchased with a view to the interment of his body and the erection of a monument thereon, and as a burial place for those of his blood who came after him. That his widow was entitled at her death to have her body repose in that lot by the side of her husband is unquestioned. It is equally true that the child of this second marriage as well as the children of the first marriage of Gov. Brown, and their descendants are entitled to sepulture in it."

One of the best reasoned cases, and the one most often cited by courts considering rights in cemetery lots is In re Waldron, supra. In laying down the general proposition that a burial lot does not pass under a general residuary clause in a will but descends as intestate property, this Rhode Island court said:

"He had devoted this lot to pious and charitable uses as a place of burial **for the members of his own family** . . . . Although this devise was to his widow, yet, as there were no children of her marriage, the lot if devised, would go out of his family to her heirs. His living daughter would have no right to be buried in the family lot. It seems improbable that he should have intended such a result . . . . It is essentially a **family heritage** . . . . It is **a family burial lot** . . . . It is that fact alone which gives a peculiar limitation to its tenure . . . . A sort of trust attaches to the land for the **benefit of the family.** Neither the widow nor the child can be excluded from it for want of title, yet such a result might follow if the tenure was like that of other real estate. Children could exclude a widow, or a widow could exclude children, by virtue of ownership of the land." (Emphasis ours.)

That a widow could exclude a child, a child the widow, or a child another child, would certainly be the result of following

the strict ruling of the Capen case or of acceding to the contention of defendant in his demurrer. To so hold would, in the opinion of this Court, destroy the age-old concept of "God's Acre", would subject the consecrated ground where a man's loved ones are interred to the whim or caprice of anyone who might even remotely claim an interest. To this Court, nothing seems more natural than for a man, alone and without family, to want to be buried with his mother and father, brothers and sisters. And nothing seems more unnatural than for a brother, who has no desire to be buried there himself, to attempt to prevent it or block the desire of his brother by attempting to engraft on the hallowed ground in which his parents repose a technicality of law. Such an attitude seems even more unnatural in view of the fact that plenty of space remains on the lot.

This Court can not believe otherwise than that John L. Persinger intended this lot as a family burying ground. He buried a child on it. He buried his wife on it. And he himself is interred there. It was evidently considered a family burying ground by John L. Persinger's children after their father died; counsel have stipulated that two other children were buried on the lot subsequent to their father's death. And who has a better right to be buried there; who better than those who during life were most intimately and closely connected by family and domestic ties? John L. Persinger had six children. He bought a lot containing eight grave spaces. What could have been his intention but that it should be a burying place for his family? Carey Persinger is a member of that family, and as such has a right to be buried there, as do his brother and sister if they so desire. And the right of each is equal and several and does not require the consent of the others.

It is agreed by counsel that the right to be buried on a lot carries with it the right to erect a monument.

Counsel for defendant have cited Bockel v. Fidelity Development Co., 101 S. W. 2d. 628 (Texas), as standing for the proposition that an heir or lineal descendant does not, merely because of such kinship, acquire an absolute right to be buried on a family plot himself, but only after the consent of all owners. This Court has been unable to put that interpretation on the case. In that case the plaintiff was a grandson who was not mentioned in his grandfather's will and who had been disinherited by his father. The court held he had no right in his grandfather's private family burial ground merely because he was a grandson, unless it was the privilege of

visitation, ornamentation and protection of the graves of relatives buried therein. In such a situation, the grandson could not have an interest comparable with that of plaintiff in this case.

The Bockel case, however, would seem to be authority for the proposition that grandchildren are not necessary parties in determining the rights of living children in their father's. cemetery lot.

Counsel for defendant have also cited Lewis v. Walker, 30 A. 500 (Penna.) for the proposition that in the case of two or more joint owners of a burial lot, no one owner may inter a body in such lot or erect a tombstone or otherwise interfere with the lot without the consent of all the other joint owners. And this case is usually cited in the texts as so holding. But the case is easily distinguishable from the one at hand. In that case, four brothers erected in the center of a cemetery lot, which they had jointly purchased, a monument, with its four sides facing the corners of the lot. On each side of the monument was inscribed the Christian name of one of the brothers, the space opposite the name being set apart as a burial place for his family. Their father and mother were buried at opposite corners of the monument. The court held this to be a family lot, and therefore one brother could not sell his interest in the lot to a stranger, so as to authorize him to bury therein a person not belonging to the family, without the consent of the other brothers. The question of one brother attempting to prevent another from being buried was not before the court. Were Carey Persinger attempting to bury a stranger on his father's lot, or sell the lot to another for that purpose, his brother and sister would have every right . to object and this Court would protect that right.

It is the opinion of this Court that the plaintiff as the child of John L. Persinger has a right to be buried in his father's family burial lot and that that right exists independently of the consent of his brother and sister; and that in an action to determine that right, his living brothers and sisters, who are the only ones who can share that right with him, and the cemetery corporation are the only necessary parties. The demurrer is therefore overruled.