MARY QUIRK MCANDREW *vs.* CHARLES I. QUIRK & another.

Suffolk.   October 8, 1952. — November 6, 1952.

Present: QUA, C. J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Cemetery.   Real Property,* Cemetery lot.   *Equity Pleading and Practice,* Appeal, Findings by judge.

Upon an appeal from the final decree in a suit in equity, where there was no report of the evidence and the trial judge made findings followed by a statement that he "therefore" ruled that the plaintiff was entitled to the relief given by the decree, the question before this court was whether the decree was proper solely on the basis of the facts found, together with certain other facts admitted in the pleadings; no further findings in support of the decree could be implied. [425]

A cemetery lot in which the original owner, his wife, several of their children and a grandchild had been buried over a period of many years was a family lot wherein a daughter of the original owner, one of his two surviving children and heirs, had no right to bury her husband without the consent of the other survivor.   [426–427]

BILL IN EQUITY, filed in the Superior Court on March 20, 1951.

The suit was heard by *Beaudreau,* J.

In this court the case was submitted on briefs.

*Charles I. Quirk,* pro se.

*Lenahan O'Connell & Sherman Rogan,* for the plaintiff.

RONAN, J.   The plaintiff brought this bill in equity against her brother and a cemetery corporation to determine her right to have her deceased husband buried in a lot which her father acquired in 1890, and to compel her brother to deliver to the cemetery corporation the deed of the lot, which he refuses to surrender, in order that the body of the deceased may be interred in the lot.   The corporation filed no

answer and took no active part in the controversy. The individual defendant appealed from a final decree granting the plaintiff the relief which she sought.

The evidence is not reported. The judge made voluntary findings of fact, all of which may be summarized as follows. The individual parties are the only surviving children of John Quirk, who died in 1904, and Julia A. Quirk, who died in 1928. Quirk purchased in 1890 from the cemetery corporation a lot measuring 17 by 32 feet, described as lots 120 and 121, "to have and to hold the same to said John Quirk, his heirs and assigns, to his and their use as a place of burial for the dead." This deed did not convey a fee in the lot but conveyed only a license to bury the dead. Each of the individual parties as the only surviving children and next of kin of the original grantee has an undivided interest in lots 120 and 121 which contain eight graves, all of which are occupied but one. It is permissible under the regulations of the board of health to bury two bodies in one grave and there are no rules of the cemetery relative to the burial of more than one body in a single grave. After the finding of these specific facts, the judge continued as follows: "I therefore rule that the complainant has a right to have her husband buried in a grave somewhere in one of those seven lots other than the one numbered 8 that is now vacant in lot No. 121, since that one should be reserved for the complainant or the respondent." A final decree was entered in accordance with this ruling.

In addition to these findings the bill alleges and the answer of the individual defendant admits that their parents, three brothers, and a grandson of John Quirk have been buried in these lots at the approximate dates alleged.[1] These admissions in the pleadings bind the parties and show beyond dispute that no interments were made in these lots except those of the immediate family of the purchaser of the lots with the further exception of the grandson who, we assume from the similarity of name, was the child of the

---

[1] These dates cover the period from 1887 to 1928. There would seem to be a mistake in the first date since the lots were not acquired until 1890.

plaintiff. *Bancroft* v. *Cook*, 264 Mass. 343. *Carson* v. *Brady, ante,* 36.

We cannot accept as evidence the numerous statements of counsel which appear only in the briefs and are not shown to be supported by the record. *Gordon* v. *Guernsey*, 316 Mass. 106, 108. *Staples* v. *Collins*, 321 Mass. 449, 450. *Comstock* v. *Dewey*, 323 Mass. 583, 585. The principle that where voluntary findings do not appear to contain all the material facts all other facts necessary to support the decree will be implied, *Birnbaum* v. *Pamoukis*, 301 Mass. 559; *Wilkins* v. *Berkeley Realty Corp.* 311 Mass. 148, has no application because the judge's ruling that the plaintiff is entitled to relief is expressly based, by the use of the word "therefore," upon the subsidiary findings recited by him. They comprise the factual basis upon which the judge decided the suit. *Walsh* v. *Atlantic Research Associates, Inc.* 321 Mass. 57, 61. See *Mahoney* v. *C & R Construction Co.* 311 Mass. 558; *Rubino's Case*, 328 Mass. 129. The question here is whether the facts admitted by the pleadings and those found by the judge support the final decree.

The purchaser of a cemetery lot ordinarily does not obtain a fee in the lot but acquires only a right to burial or an easement to use the lot for the burial of the dead so long as the place continues to be used as a cemetery. *Sohier* v. *Trinity Church*, 109 Mass. 1. *Feeley* v. *Andrews*, 191 Mass. 313. *Trefry* v. *Younger*, 226 Mass. 5. John Quirk during his lifetime had the exclusive right, subject to whatever conditions were contained in the instrument by which he obtained his interest in the lot, to say who should be buried in his lot. If he died intestate, his interest passed "indivisible but inheritable" to his heirs at law. See G. L. (Ter. Ed.) c. 114, § 29. If he died testate and his will made no express disposition of his burial lot "wherein he or any member of his family is buried, the ownership of the lot shall not pass from his lawful heirs by any residuary or other general clause of the will, but shall descend to his heirs, as if he had died intestate." G. L. (Ter. Ed.) c. 114, § 31. Such a lot was considered as a family lot, and this

statutory provision was made apparently to keep the lot in the family of the testator. The title to the statute, St. 1914, c. 492, from which § 31 originates read as follows: "An Act to provide for the better protection of family cemetery lots." The title only confirms what the act implies, *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 501; *Commissioner of Corporations & Taxation* v. *Chilton Club*, 318 Mass. 285, 292, that a burial lot purchased by the testator and in which he or a member of his family has been interred should be regarded as a family burial lot. Both the statutes last cited manifest the solicitude of the law to keep a burial lot purchased by the head of the family within the family.

There is nothing in this record to show whether John Quirk died intestate or testate, but it is not questioned that his former interest is now held by the individual parties to this suit, to be used by them subject to the same conditions subject to which it was held by their father. When he purchased these two lots with space for eight graves in 1890, his wife, a daughter, and three or four sons were living. At least one of the sons was buried in the lot while Quirk was alive — if the facts admitted by the pleadings are correct — and Quirk himself was buried there and so were his widow and one of his sons who died subsequent to their father. Upon the facts admitted and found, no other conclusion is possible than that this lot was a family burial lot for the use of his family. In the light of the facts admitted by the pleadings and the subsidiary findings of the judge, the judge was wrong in ruling that the plaintiff had the right to have her deceased husband buried in these lots. It was said in *Waldron, petitioner*, 26 R. I. 84, that a lot acquired and used in a manner similar to the one now in question "is a family burial lot. It is that fact alone which gives a peculiar limitation to its tenure. The heir takes it subject to all the conditions for which the ancestor held it. A sort of trust attaches to the land for the benefit of the family." By the weight of authority, one not a member of the family for whose use the lot was purchased has no right to be interred

therein unless all the surviving members of the family assent. *People* v. *Bloomington Cemetery Association*, 353 Ill. 534. *Persinger* v. *Persinger*, 39 Ohio Op. 315. *Lewis* v. *Walker*, 165 Pa. 30. *Silvia* v. *Helger*, 75 R. I. 397. In *Capen* v. *Leach*, 182 Mass. 175, it was held that one tenant in common could not by the erection of a monument deprive the other coöwners of their interest in the lot. That case did not involve burial rights of the children in a lot which their father had purchased or the right of one child, the other child objecting, to have her husband buried in the lot.

We do not think that the plaintiff is aided by G. L. (Ter. Ed.) c. 114, § 32, giving the wife the right to burial in her husband's lot, or by § 33 giving the husband the same rights in her lot as she would have in his lot. These sections define the right of one in the burial lot of the other. They cannot be extended to create the rights of either as against third parties or in this case to eliminate the necessity of the consent of one child before another child can inter her husband in the family lot of their father.

As the admitted facts and the subsidiary findings do not support the final decree, that decree is reversed and a final decree is to be entered dismissing the bill with costs.

*So ordered.*