Ivory DAVIS–EL, Plaintiff,

v.

Michael O'LEARY, et al., Defendants.

No. 85 C 2396.

United States District Court,
N.D. Illinois, E.D.

Jan. 17, 1986.

Ivory Davis-El, pro se.

Neil F. Hartigan, Atty. Gen. of Illinois by Marita C. Sullivan, Asst. Atty. Gen., General Law Div., Chicago, Ill., for defendants.

BUA, District Judge.

## ORDER

Before the Court is defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), plaintiff's action challenging the procedures of the Illinois Prisoner Review Board. For the reasons stated herein, defendants' motion is granted in part and denied in part.

## I. FACTS

Plaintiff brings this action under 42 U.S.C. § 1983 challenging the parole procedures used by the Illinois Prisoner Review Board. Plaintiff appeared before the Board in January 1984 and was given a continuance to February 1, 1984. Plaintiff was heard and given an en banc continuance. On February 9, 1984, the Board sitting en banc denied the plaintiff parole. Plaintiff appeared before the Board on October 31, 1984 and was given an en banc continuance. Parole was denied November 5, 1984.

Plaintiff's complaint consists of ten claims alleging that defendants violated: (1) plaintiff's procedural due process and equal protection rights due to the Board's failure to keep minutes of their en banc hearings; (2) plaintiff's procedural due process and equal protection rights due to the refusal of the Stateville records office supervisor to let plaintiff see his master file; (3) plaintiff's right to "procedural due process record access" and equal protection due to the Board granting plaintiff's request to see his parole board files but not his master file; (4) the ex post facto clause of the United States Constitution due to a change in procedure which requires en banc hearings for all prisoners having twenty or more years left on their sentences; (5) plaintiff's right to equal protection due to the change in procedure; (6) plaintiff's and all prisoners with twenty years or more left on their sentence right to equal protection and due process because the change in procedure discriminates against them; (7) plaintiff's right to due process because the change in procedure is arbitrary and capricious, discriminating against a specific group of prisoners; (8) plaintiff's right to procedural due process and equal protection due to the prison officials' discretion concerning when to grant bonus institution credits to model prisoners; (9) plaintiff's right to equal protection because the parole denial was based on his race; and (10) plaintiff's right of equal protection due to the fact that prisoners at Stateville Correctional Center are paroled at a slower rate than inmates at other maximum security prisons in Illinois.

## II. DISCUSSION

### A. *Failure to Keep Parole Hearing Minutes*

Plaintiff argues that the failure of the Board to keep minutes of its en banc

hearings and rehearings constitutes a due process violation. In support of this argument, plaintiff asserts that the Illinois Open Meetings Act, *Ill.Rev.Stat.*1983, ch. 102, Par. 42.06 (the Act), creates a protectible due process liberty interest in recording minutes of the Board's hearings. The defendants counter that Paragraph 42(b) of the Act specifically exempts the Board's hearings from the Act's scope. Defendants also argue that the violation of the Act does not necessarily implicate a constitutional violation.

When state law is a possible source of a liberty interest, the analysis concerning its identification as a constitutionally protected interest "parallels the accepted due process analysis as to property." *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). However, the parallel between the property and liberty interest analyses is not unwavering, and in some settings it is inappropriate strictly to apply a property interest analysis to the task of determining the existence of constitutionally protected liberty interests. *See Jago v. VanCuren,* 454 U.S. 14, 17–23, 102 S.Ct. 31, 34–37, 70 L.Ed.2d 13 (1981) (per curiam). Indeed, *Jago v. VanCuren, supra,* indicates that a less expansive approach to the identification of liberty interests is appropriate in the prison setting than would be the case if the usual property interest inquiry under *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) were utilized. *Shango v. Jurich,* 681 F.2d 1091, 1100 n. 17 (7th Cir.), *reh. denied,* 681 F.2d 1091 (7th Cir.1982).

Although the existence of a liberty interest may be ascertained by reference to state law, once such an interest is identified, the task of defining the procedural protections which attach to that interest is wholly a matter of federal constitutional law and is accomplished through application of the balancing analysis of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Shango v. Jurich, supra,* 681 F.2d at 1098. Once it is determined what process is due to the individual before he can be deprived of the specific

liberty or property interest by the state, state procedures are scrutinized to see if they comport with the federal procedural due process requirements. *Id.* However, state procedural protections cannot define what process is due. *Id.* The Fourteenth Amendment's limitation on state action would be illusory if state practices were synonymous with due process. *Id.*

Therefore, the issue here becomes, assuming arguendo the existence of a right to have the minutes of the Board's hearings recorded, whether this interest is entitled to federal due process protection. In determining this issue, the dispositive inquiry is not the source of the purported liberty interest, but rather " 'the *nature* of the interest at stake.' " *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979) (quoting *Board of Regents v. Roth, supra,* 408 U.S. at 571, 92 S.Ct. at 2706 (emphasis in *Roth* )). The nature of the interest in having minutes of the Board's hearings recorded relates solely to finding out whether the basis for the Board's decision is proper. However, as such, this interest overlaps with the test for determining whether a statement of reasons for a decision denying parole is constitutionally adequate. *See United States ex rel. Scott v. Ill. Parole and Pardon Board,* 669 F.2d 1185, 1190 (7th Cir.1982) (per curiam).

In *Scott,* the Seventh Circuit Court of Appeals held that Illinois' parole release statute creates a constitutional liberty interest under the United States Supreme Court's analysis in *Greenholtz v. Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The Seventh Circuit went on to state the test for determining whether a statement of reasons for a denial of parole is sufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. Quoting *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925 (2d Cir.), *vacated as moot,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), the Sev-

enth Circuit set forth the determinative test:

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision ... and the essential facts upon which the Board's inferences are based.

*Scott, supra,* 669 F.2d at 1190.

The Seventh Circuit went further to elucidate the *Johnson* test's rationale in light of *Greenholtz:*

> *Greenholtz* makes clear that, even when the Due Process Clause applies to a parole release determination, there is "nothing in the due process concepts as they have thus far evolved that requires the Parole Board to specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release." 442 U.S. at 15, 99 S.Ct. at 2107.

*Scott, supra,* 669 F.2d at 1190-91.

Therefore, in *Scott,* the Seventh Circuit concluded that due process does not require detailed findings of fact or specification of particular evidence which forms the basis for a parole denial.

By arguing that a failure to keep minutes of the Board's hearings constitutes a constitutional violation, plaintiff seeks to require, under the guise of a due process analysis, what the Seventh Circuit has already concluded in *Scott* is not required by due process. To wit, the only purpose of requiring the Board to keep minutes of its hearings and making the failure to do so a constitutional violation is to prevent parole denials for impermissible reasons. However, this concern has been addressed in the due process analysis in *Scott* and the Seventh Circuit concluded that due process requires only a limited factual inquiry.

Since plaintiff's proposed interest in the keeping of minutes of the Board's hearings go beyond the limited factual inquiry set forth in *Scott,* the Court concludes that due process does not require the keeping of minutes of the Board's hearings and that failure to do so does not constitute a constitutional violation.

### B. *Access to Parole Board Files and Plaintiff's Master File*

■ Plaintiff argues that he was denied access to those portions of his Master File and the Board's files which the Board relied upon in reaching its decision to deny him parole at the October 31, 1984 hearing. In support of this argument, plaintiff cites Administrative Regulation # 844 of the Illinois Department of Corrections as requiring that he be given access to any factual information relied upon by the Board. Plaintiff concludes that the failure to provide him such access constitutes a violation of procedural due process. Defendants counter that plaintiff's counselor requested to see his entire Master File. As such, plaintiffs request violated Administrative Regulation # 844 and therefore no procedural due process violation occurred.

The Seventh Circuit Court of Appeals has held that denial of access to a prisoner's parole file violates the command of Rule IV(c) of Illinois' Rules Governing Parole that "[a] parole candidate shall have access to all documents which the Board considers in denying parole." *Walker v. Prisoner Review Board,* 694 F.2d 499, 503 (7th Cir.1982). The *Walker* court further held that such access was an element of due process. *Id.; see also Walker v. Prisoner Review Board,* 769 F.2d 396, 397 (7th Cir.1985). Administrative Regulation # 844, which is *not* to the contrary, provides in pertinent part:

> C. Persons under commitment shall not be given access to the resident Master Record Files under any circumstances, whether acting for themselves or for others. Factual information relied upon by the Disciplinary Committee, Assignment Committee, Merit Staff or Parole and Pardon Board to make a determination

which results in an increase in the length of confinement—such as parole denial or revocation, loss of good time, or institution credits—shall be given to the resident and his attorney of record upon request. Factual information shall not be deemed to include professional opinion reports.

In the present case, the plaintiff made a request through his counselor, Laura Landhuis, to see any portions of his Master File upon which the Board relied during the November 1984 parole hearings. Ms. Landhuis consulted with the Stateville Record Office Supervisor, Michael Krolikiewicz, and informed him of the plaintiff's request. Krolikiewicz allegedly refused this request.

It is unclear whether the plaintiff requested to see his entire Master File or only those portions relied upon by the Board. However, on a motion to dismiss, it is not proper to resolve this factual uncertainty, especially in light of the Seventh Circuit's clear pronouncement in *Walker* that a procedural due process right exists for a parole candidate's access to factual information relied upon by the Board. Accordingly, defendants' motion to dismiss Counts II and III of plaintiff's complaint is denied.

### C. *En Banc Hearing Requirement*

■ In Counts IV–VII, plaintiff attacks the constitutionality of a new law which requires that parole for prisoners convicted of murder or who received a minimum sentence of twenty years or more under the law in effect prior to February 1, 1978 shall be determined by a majority vote of the Prisoner Review Board. *Ill.Rev.Stat.* Ch. 38, Section 1003–3–2(a)(2) (1984). First, plaintiff argues that this legislative enactment is an ex post facto violation because it decreases plaintiff's chances for parole. Second, plaintiff argues that the enactment violates due process and equal protection because it is fundamentally unfair and it impacts discriminatorily on him and others similarly situated, *e.g.* those prisoners convicted of murder or serving a minimum sentence of twenty years.

In order for a law to violate the ex post facto prohibition of the United States Constitution it must be both (1) retrospective and (2) disadvantageous to the offender affected by it. *Heirens v. Mizell*, 729 F.2d 449, 459 (7th Cir.1984). The Court finds the Seventh Circuit's analysis in *Heirens* to be dispositive of the plaintiff's ex post facto arguments here. In *Heirens*, the Seventh Circuit found that, prior to the enactment of the law in question, the Illinois Parole Board possessed broad discretion with regard to parole decisions. The court concluded that the new law merely codified prior law and therefore the new law was not disadvantageous to inmates who committed their crimes prior to the new law's enactment.

In the present case, the Court finds that the en banc hearing requirement codifies prior law and therefore is not disadvantageous to prisoners sentenced prior to its enactment. Prior to the new law, the Prisoner Review Board possessed the power to review a prisoner's request for parole before the entire Board. The legislature allowed the Board, in its discretion, to conduct parole hearings before "at least three members." *Ill.Rev.Stat.* Ch. 38, Section 1003–3–2. In addition, since 1981, the Board established a practice of hearing some cases en banc. In light of the prior law and the Board's prior policy, the Court concludes that the new en banc requirement for certain cases codifies prior law, is not disadvantageous to prisoners sentenced prior to its enactment, and therefore does not violate the ex post facto prohibition of the Constitution.

In addition, the review before a majority of the Board does not pose additional punishment. The percentage of Board members necessary to successfully vote for parole has decreased from two out of three (the old three-member panel) to six out of ten (the new law). Since it actually may increase prisoners' chances for parole, the en banc hearing is not disadvantageous to them and, as such, cannot violate the ex post facto prohibition.

■ Plaintiff's arguments that the en banc hearing requirement violates due process and equal protection also fail. Plaintiff does not allege that he is a member of any protected class recognized under equal protection law. Therefore, to sustain an equal protection challenge to the en banc hearing requirement, the plaintiff must show that the legislature had no rational basis for establishing a discrepancy between en banc and three-member panel hearings. *See Inglese v. U.S. Parole Commission,* 768 F.2d 932, 940 (7th Cir.1985). However, it is rational for the legislature to require that prisoners who committed more serious offenses have their parole requests reviewed by the entire Prisoner Review Board in order to insure protection against the premature release of these prisoners. Therefore, finding that the en banc hearing requirement has a rational basis, the Court rejects plaintiff's equal protection challenge.

Plaintiff's due process challenge must be based upon an "expectation of release on parole" embodied in the three-member panel hearings. *Solomon v. Elsea,* 676 F.2d 282, 284 (7th Cir.1982). Neither the three-member panel hearings nor the en banc hearings create an expectation of release on parole. In addition, the statute enacted prior to the plaintiff's sentencing set a minimum, but no maximum, on the number of Board members necessary for a parole hearing. Therefore, the Court finds no violation of due process due to the en banc hearing requirement. Accordingly, Counts IV–VII are dismissed.

### D. *Institution Credits*

■ Plaintiff argues in Count VIII that he has a liberty interest in being submitted for the maximum amount of institution credits possible. In support of this argument, plaintiff cites Administrative Regulation # 813 and Administration and Rules Section 107.170. Plaintiff concludes that the fact that he was given 60 days in institution credits, instead of 90 days, constitutes a due process and equal protection violation. Defendants counter that the grant or denial of institution credits is within the discretion of prison officials and therefore plaintiff has no liberty interest.

The Court agrees with the defendants' argument. The applicable regulations provide that institution credits "may be recommended" and set forth various factors to be considered. According to the regulations, the grant or denial of institution credits is clearly within the discretion of prison officials. Therefore, under the analysis in *Greenholtz, supra,* the mere hope or expectancy of a benefit is not enough to invoke due process protection.

Regarding plaintiff's equal protection argument, he does not argue that he was treated differently from others. Plaintiff argues only that the policy of the prison officials to grant 90 days in institution credits only in exceptional circumstances violates equal protection. Since he attacks the policy of prison officials and does not argue that he was treated differently from others, his equal protection claim fails. Accordingly, Count VIII is dismissed.

### E. *Denial of Parole*

■ In Count IX, plaintiff argues that he was denied parole on the basis of race. In support of this argument, he asserts that the Board has a policy of discriminating against prisoners of African ancestry. He further contends that prisoners of European ancestry are paroled at a faster rate disproportionate to prisoners of African ancestry. In Count X, plaintiff asserts that prisoners at Stateville Correctional Center are paroled at a slower rate than prisoners at other state correctional centers.

Equal protection requires that the state not discriminate against prisoners on the basis of race. *Madyun v. Thompson,* 657 F.2d 868, 874 (7th Cir.1981); *see also Harris v. Greer,* 750 F.2d 617, 618 (7th Cir. 1984). While the plaintiff alleges no facts to support purposeful discrimination, he does allege statistical evidence to support his claim of racial discrimination in his parole denial. Notwithstanding the paucity of plaintiff's allegations, the Court believes it inappropriate to dismiss plaintiff's race discrimination claim in Count IX.

However, plaintiff's claim of discrimination based upon allegations that Stateville prisoners are paroled at a slower rate than prisoners at other state correctional centers fails because it does not implicate a suspect class, *e.g.*, race, recognized under equal protection analysis.

### F. *Immunity*

 Defendants argue that the members of the Prisoner Review Board enjoy absolute immunity from a suit for damages under 42 U.S.C. § 1983. In addition, they argue that the prison officials enjoy qualified immunity.

In *Walker v. Prisoner Review Board,* 769 F.2d 396 (7th Cir.1985), the Seventh Circuit held that Board members have absolute immunity from damages in a § 1983 action for adjudicatory and administrative actions. *Id.* at 399. In the present case, the plaintiff may only seek injunctive relief from the Board and its members. *Id.*

 Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). If the law at the time an action occurred is not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. *Id.* If the law was clearly established, the immunity defense ordinarily should fail. *Id.* at 818–19, 102 S.Ct. at 2738.

In the present case, in the remaining counts involving the prison officials, only counts II and III relating to access to parole files remains. The Court finds that the law regarding access to parole files was clearly established, especially in light of the administrative regulation, at the time the alleged refusal to access those files occurred. Therefore, defendants' argument for qualified immunity for prison officials on Counts II and III fail.

### III. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted for Counts I, IV–VIII, and X, and denied for Counts II, III, and IX. Accordingly, Counts I, IV–VIII, and X of plaintiff's complaint are dismissed. In addition, defendants' motion to dismiss is granted as to the absolute immunity of members of the Prisoner Review Board and denied as to the qualified immunity of prison officials.

IT IS SO ORDERED.