Thomas LaCava *vs.* Vilho Lucander & others.[1]

No. 01-P-549.

Worcester. October 10, 2002. - July 10, 2003.

Present: Gelinas, Doerfer, & Green, JJ.

*Cemetery. Constitutional Law,* Imprisonment, Equal protection of laws. *Anti-Discrimination Law,* Public accommodation. *Civil Rights,* Availability of remedy. *Statute,* Construction. *Administrative Law,* Judicial review.

An inmate imprisoned for the murder of his wife failed to demonstrate that the action of cemetery commissioners in denying his request for a burial plot in the same cemetery in which his wife was buried violated art. 1 of the Massachusetts Declaration of Rights [531-533]; amounted to discrimination in a place of public accommodation in violation of G. L. c. 272, § 92A, and G. L. c. 272, § 98 [533-535]; constituted purposeful discrimination based on membership in a protected class in violation of the Massachusetts equal rights statute, G. L. c. 93, § 101 [535-536]; or constituted an abuse of discretion, or was arbitrary, capricious, and in excess of its authority [536].

Civil action commenced in the Superior Court Department on October 20, 1999.

Motions to dismiss and for reconsideration were heard by Timothy S. Hillman, J.

*Thomas LaCava,* pro se.

*John J. Cloherty, III,* for the defendants.

Gelinas, J. While a prisoner at the Massachusetts Correctional Institution at Cedar Junction, serving a life sentence for the murder of his wife, Thomas LaCava contacted a Worcester funeral director, asking that the director arrange for a burial plot

---

[1]Robert C. Mason and Everett C. Hines. Each defendant is sued both individually and in his capacity as cemetery commissioner of the town of Westminster.

for his remains in Woodside Cemetery, a town cemetery in Westminster.[2] Woodside is the same cemetery where his wife is buried. The funeral director reported to LaCava that the cemetery commission had refused the request, offering instead to provide LaCava a burial plot in Whitmanville Cemetery, another Westminster town cemetery. Upon the refusal, LaCava brought suit in Superior Court. LaCava named the three Westminster cemetery commissioners as defendants, both in their capacity as cemetery commissioners and as individuals. The original complaint contained allegations of civil rights violations under 42 U.S.C. § 1983. The defendants removed the matter to Federal District Court, where LaCava then moved to dismiss all claims under Federal law and requested the matter be remanded to the State Superior Court. After remand, LaCava filed an amended complaint in three counts, claiming that the town's denial (1) infringes upon his equal protection rights under art. 1 of the Massachusetts Declaration of Rights (count I); (2) violates G. L. c. 272, § 98, in that he is denied admission to a place of public accommodation (count II); (3) constitutes a violation of Massachusetts's equal rights statute, G. L. c. 93, § 102 (count II); and (4) constitutes an abuse of discretion, and is arbitrary, capricious, and in excess of the commission's authority (count III). A Superior Court judge allowed the defendants' motion to dismiss under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), and later denied LaCava's motion for reconsideration. Both rulings were entered in simple marginal notation, unaccompanied by findings, memoranda, or comment. LaCava appeals from both the dismissal and the denial of his motion for reconsideration. We affirm.

*Background.* For context, we set out in the margin the govern-

---

[2]On appeal, LaCava argues that he sought a burial plot both for himself and his deceased infant son. The allegation that he sought a plot for his son is not contained in either his original or amended complaint; other than a single reference to his seeking to "purchase grave sites at Woodside Cemetery," all references in LaCava's complaint and in the prayers for relief relate to a place in the cemetery for his burial only. We consider any issue raised by that argument waived and note that nothing in the cemetery commission's decision or the trial court's ruling would adversely affect a request for burial space for the deceased son.

ing statutory provisions, G. L. c. 114, §§ 10, 22-24, according to which the cemetery was established and operates, and pursuant to which the commissioners were elected.[3] The commissioners, pursuant to § 23, adopted rules and regulations, reissued July 1, 1999, containing various provisions dealing with perpetual care, foundations, monuments, the allocation of the costs of interment, the disposition of funds, and the like. Regulation B, "Sale of Lots/Perpetual Care," states in part: "The purchase of a lot or any other interment space gives the purchaser the right of interment . . . and the right to provide an approved memorial. The ownership of the land remains with the Town of Westminster and all lots and graves are subject to Chapter 114 of the General Laws of the Commonwealth of Massachusetts." See *McAndrew* v. *Quirk*, 329 Mass. 423, 425 (1952) (purchaser of cemetery lot ordinarily does not obtain a

---

[3]General Laws c. 114, § 10, provides: "Each town shall provide one or more suitable places for the interment of persons dying within its limits." While it is doubtful that LaCava will die in Westminster, as he is serving a life sentence without possibility of parole in Walpole, nothing in the statute or the commission's by-laws limits its sale of burial plots to persons dying in Westminster.

General Laws c. 114, § 22, provides, in pertinent part: "A town which accepts this and the four following sections or has accepted corresponding provisions of earlier laws may, at any town meeting, elect by ballot a board of cemetery commissioners consisting of three persons."

General Laws c. 114, § 23, provides: "Said board shall have the sole care, superintendence and management of all public burial grounds in its town, may lay out any existing public burial grounds in its town or any land purchased and set apart by said town for such cemeteries, in lots or other suitable subdivisions, with proper paths and avenues, may plant, embellish, ornament and fence the same and erect therein such suitable edifices and conveniences and make such improvements as it considers convenient; and, subject to the approval of the town, may make such regulations, consistent with law, as it deems expedient."

General Laws c. 114, § 24, as amended by St. 1948, c. 550, § 50, provides: "Said board may, by deed made and executed in such manner and form as it may prescribe, convey to any person the sole and exclusive right of burial in any lot in such cemeteries and of erecting tombs, cenotaphs and other monuments or structures thereon upon such terms and conditions as its regulations prescribe. Such deeds and all subsequent deeds of such lots made by owners thereof shall be recorded in the office of the city or town clerk in books kept for that purpose upon the payment of the fee provided by clause (78) of section thirty-four of chapter two hundred and sixty-two, and said records shall be open to the public at all reasonable times."

fee but acquires only right of burial or easement to use lot for burial). It is clear that Woodside cemetery is a public cemetery, governed by and under the provisions of G. L. c. 114.

In refusing LaCava's request for a burial plot in Woodside, the commission, through its chair, Vilho Lucander, indicated that "there has been much concern . . . from [LaCava's] daughters and other[s] in the town" and that "to be fair and sensitive to their concerns, . . . [LaCava] could not be buried in Woodside Cemetery but there is another town cemetery, Whitmanville, where [he] could purchase a grave." Minutes of an earlier commission meeting include the following entry: "[LaCava] is serving time for the murder of his wife and the family objects to the presen[ce] of his remains in the same area as his wife's." Minutes of a subsequent meeting report that "Town coun[sel] has supported our decision to supply/sell a lot to Mr. LaCava in the Whitmanville Cem. and prevent the anguish the family has displayed at the thought he would be buried in an area near his wife's grave whom he murdered."

*Discussion.* In testing claims against a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), "a complaint is sufficient unless it shows beyond doubt that there is no set of facts which the plaintiff could prove in support of his claim which would entitle him to relief." *White* v. *Spence*, 5 Mass. App. Ct. 679, 683 (1977), quoting from *Howard* v. *G.H. Dunn Ins. Agency, Inc.*, 4 Mass. App. Ct. 868 (1976). Complaints should be read indulgently in favor of the pleader when considering a motion to dismiss. "[T]he allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). "[A] complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." *Id.* at 104.

We first note that LaCava has, on appeal, specifically waived any claim to a burial plot based on his rights under G. L. c. 114,

§ 33,[4,5] and accordingly, we exclude from consideration here any possible claim under that section of the statute.[6]

1. *Equal protection.* We next consider LaCava's claim in count I that he was denied equal protection under art. 1 of the Massachusetts Declaration of Rights. Our review of an equal protection claim is the same under the Massachusetts Declaration of Rights as it is under the Fourteenth Amendment. *Rushworth* v. *Registrar of Motor Vehicles,* 413 Mass. 265, 272 (1992). LaCava makes no claim that the statute enabling the creation of town cemeteries or the town by-law governing their operation violates art. 1. Compare *Karchmar* v. *Worcester,* 364 Mass. 124, 135-136 (1973). Rather, his equal protection claim is based on the commission's actions denying him burial space

---

[4]General Laws c. 114, § 33, the reciprocal of G. L. c. 114, § 32, provides: "A husband shall have the same rights in the tomb or burial lot of his wife as a wife has in that of her husband."

General Laws c. 114, § 32, provides: "A wife shall be entitled to a right of interment for her own body in any burial lot or tomb of which her husband was seized at any time during coverture, which shall be exempt from the operation of the laws regulating conveyance, descent, and devise, but may be released by her in the same manner as dower."

[5]LaCava's brief states: "Plaintiff did not seek, nor wish to be buried with or near his wife. He merely seeks to purchase a grave site in his hometown neighborhood cemetery."

[6]LaCava's amended complaint did not explicitly press a claim under G. L. c. 114, § 33, which, when read in conjunction with G. L. c. 114, § 32, grants a husband the right to be buried with his wife. A generous reading of the pleading, see *Nader* v. *Citron,* 372 Mass. at 98; *White* v. *Spence,* 5 Mass. App. Ct. at 683, which claimed that "refusing such right of burial to plaintiff to be fair and sensitive to the concerns of the plaintiff's daughters and others was an abuse of discretion, arbitrary, capricious, contrary to law, [and] in excess of authority of the board," we think fairly stated facts upon which relief might have been granted. Compare *Levine* v. *E.F. Hutton & Co.,* 15 Mass. App. Ct. 976, 977 (1983). Summary judgment proceedings would have established, at the trial level, any claim that LaCava might have made under G. L. c. 114, §§ 32 and 33, and permitted further development as to who had control of the burial site of the wife, see G. L. c. 114, § 28, and whether, under those circumstances, the commission had the authority to refuse burial in a plot to which LaCava had a right to be buried. Further proceedings would also have established, at the trial level, LaCava's desire to waive any claim under G. L. c. 114, §§ 32 and 33. We have expressed our preference for allowing a case to advance to the procedural stage best able to have all issues thoroughly developed; in this case, summary judgment proceedings would have offered fuller exposition of the issues. See *Kirkland Constr. Co.* v. *James,* 39 Mass. App. Ct. 559, 564 (1995) (Brown, J., concurring).

in the cemetery of his choice. In order to invoke "strict scrutiny" of the commission's action, see *Blixt* v. *Blixt*, 437 Mass. 649, 660 (2002), LaCava must show that he was treated differently because of his membership in a suspect class, or that the commission's actions trammeled on one of his fundamental rights. Absent such showing, we look only to see whether the commission's action bore a "reasonable relationship to some proper object." *Bauza* v. *Morales Carrion*, 578 F.2d 447, 450 (1st Cir. 1978).

LaCava does not claim, nor does a generous reading of his complaint suggest, that he is a member of a suspect class, that is, a member of a class that is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Massachusetts Bd. of Retirement* v. *Murgia*, 427 U.S. 307, 313 (1976), quoting from *San Antonio Sch. Dist.* v. *Rodriguez*, 411 U.S. 1, 28 (1973). Suspect classes for equal protection purposes include classifications based on race, religion, alienage, national origin and ancestry, and certain quasi suspect classes, based on gender and illegitimacy. See *Soares* v. *Gotham Ink of New England, Inc.*, 32 Mass. App. Ct. 921, 923 (1992); *Owens* v. *Ventura County Superior Ct.*, 42 F. Supp. 2d 993, 998 (C.D. Cal. 1999). "Although . . . seriously disadvantaged when . . . compared to individuals at liberty and although they are the subject of political hostility, [inmates qua inmates, and not part of another recognized class] do not constitute a suspect class because their status is the result of precise, individualized application of otherwise neutral laws." *Graham* v. *Bowen*, 648 F. Supp. 298, 301 (S.D. Tex. 1986). See *Hastings* v. *Commissioner of Correction*, 424 Mass. 46, 53 (1997) (prisoners not inherently suspect classification for equal protection purposes); *Lee* v. *Governor of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996); *Davis-El* v. *O'Leary*, 626 F. Supp. 1037, 1043 (N.D. Ill. 1986).

Nor do we think that the right to be buried in a cemetery of one's choosing is a fundamental right for purposes of equal protection, such that the commission's actions here would be

subject to the strict scrutiny required when fundamental rights are violated. Fundamental rights generally are those that stem explicitly from or are implicitly guaranteed by the Constitution. *Plyler* v. *Doe*, 457 U.S. 202, 217 & n.15 (1982). Burial in a particular cemetery is not viewed as a fundamental or essential right where not required by the fundamental right of freedom of religious practice. See *Mount Elliott Cemetery Assn.* v. *Troy*, 171 F.3d 398, 404, 407 (6th Cir. 1999) (Roman Catholic religion does not require burial in Catholic cemetery; court noted proximity of other cemeteries acceptable to religious beliefs of the plaintiff's members). No such claim of impairment of religion is apparent or inherent in LaCava's complaint. On its face, LaCava's complaint alleges facts that preclude a basis for recovery under count I; the allegation that the commission refused his request in order to comply with the wishes of LaCava's daughters and to forestall the anguish they would suffer provides a minimal rational basis supporting the commission's actions. See *Abdulah* v. *Commissioner of Ins.*, 907 F. Supp. 13, 16 (D. Mass. 1995), quoting from *LCM Enterprises, Inc.* v. *Dartmouth*, 14 F.3d 675, 679 (1st Cir. 1994) (under "rational basis" test, no actionable discrimination if "any state of facts reasonably may be conceived to justify the [action]"). We conclude that his claim here fails to allege sufficient minimal facts under any legally cognizable equal protection theory, and that dismissal of this count was therefore appropriate. See *Robinson* v. *Commonwealth*, 32 Mass. App. Ct. 6, 12 (1992); *Watson* v. *Kansas City*, 857 F.2d 690, 696-697 (10th Cir. 1988).

2. *Public accommodation.* We next consider LaCava's claims that the commission's action in denying him a burial plot in Woodside cemetery was discriminatory, in violation of G. L. c. 272, § 92A,[7] and G. L. c. 272,

---

[7]General Laws c. 272, § 92A, as amended through St. 1978, c. 331, provides, in pertinent part: "A place of public accommodation, resort or amusement within the meaning hereof shall be defined as and shall be deemed to include any place, whether licensed or unlicensed, which is open to and accepts or solicits the patronage of the general public and, without limiting the generality of this definition, whether or not it be (1) an inn, tavern, hotel, shelter, roadhouse, motel, trailer camp or resort for transient or permanent guests or patrons seeking housing or lodging, food, drink, entertainment, health, recreation or rest; (2) a carrier, conveyance or elevator for the transportation of persons, whether operated on land, water or in the air, and

§ 98.[8] In this connection, LaCava claims that Woodside cemetery is a place of public accommodation as defined in G. L. c. 272, § 92A. We note in passing that it appears that his claim in this regard may have merit. Although not central to our decision, principles of statutory construction and review of cognate laws in other States suggest that a town cemetery may well be a place of public accommodation. There is no doubt that Woodside cemetery is a "place." See *United States Jaycees* v. *Massachusetts Commn. Against Discrimination,* 391 Mass. 594, 601-602 (1984). The scope of the term "place," as used in G. L. c. 272, 92A, was substantially broadened by St. 1953, c. 437, which added the words "any place . . . which is open to and accepts or solicits the patronage of the general public." "[T]he enumerated specific examples of 'places of public accommodation' do not restrict the preceding general statutory

the stations, terminals and facilities appurtenant thereto; (3) a gas station, garage, retail store or establishment, including those dispensing personal services; (4) a restaurant, bar or eating place, where food, beverages, confections or their derivatives are sold for consumption on or off the premises; (5) a rest room, barber shop, beauty parlor, bathhouse, seashore facilities or swimming pool, except such rest room, bathhouse or seashore facility as may be segregated on the basis of sex; (6) a boardwalk or other public highway; (7) an auditorium, theatre, music hall, meeting place or hall, including the common halls of buildings; (8) a place of public amusement, recreation, sport, exercise or entertainment; (9) a public library, museum or planetarium; or (10) a hospital, dispensary or clinic operating for profit."

[8]General Laws c. 272, § 98, as amended by St. 1989, c. 516, § 16, provides: "Whoever makes any distinction, discrimination or restriction on account of race, color, religious creed, national origin, sex, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, deafness, blindness or any physical or mental disability or ancestry relative to the admission of any person to, or his treatment in any place of public accommodation, resort or amusement, as defined in section ninety-two A, or whoever aids or incites such distinction, discrimination or restriction, shall be punished by a fine of not more than twenty-five hundred dollars or by imprisonment for not more than one year, or both, and shall be liable to any person aggrieved thereby for such damages as are enumerated in section five of chapter one hundred and fifty-one B; provided, however, that such civil forfeiture shall be of an amount not less than three hundred dollars; but such person so aggrieved shall not recover against more than one person by reason of any one act of distinction, discrimination or restriction. All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement subject only to the conditions and limitations established by law and applicable to all persons. This right is recognized and declared to be a civil right."

language, or provide a basis for applying the principle of ejusdem generis." *Local Fin. Co. of Rockland* v. *Massachusetts Commn. Against Discrimination*, 355 Mass. 10, 13 (1968) (extending definition to include loan office). See *Concord Rod & Gun Club, Inc.* v. *Massachusetts Commn. Against Discrimination*, 402 Mass. 716 (1988) (extending definition to include fishing and hunting club). Contrast *Santos* v. *Bettencourt*, 40 Mass. App. Ct. 90 (1996) (statutory definition limited by the application of the doctrine of ejusdem generis). The statutes and by-laws governing the operation of Woodside can fairly be read as accepting and soliciting the patronage of the general public. Further, several States with similar statutes specifically include cemeteries as places of public accommodation. See, e.g., the Illinois Human Rights Act, 75 Ill. Comp. Stat. Ann. 5/5-101 (West 2001); N.Y. Civ. Rights Law § 44-a (McKinney 1992); the Kansas Acts Against Discrimination, Kan. Stat. Ann. § 44-1002 (2000). As well, the Pennsylvania Supreme Court has held, under a statute very similar to ours, that a nonsectarian cemetery was a "place of public accommodation" within the purview of Pennsylvania's Human Relations Act. *Pennsylvania Human Relations Commn.* v. *Alto-Reste Park Cemetery Assn.*, 453 Pa. 124, 129-133 (1973). Any determination in this regard, however, would ultimately be of no help to LaCava. His complaint again does not state facts upon which recovery might be had; he does not claim that the defendants denied him access to Woodside cemetery on any basis prohibited by the public accommodation law, which includes only sex, race, ancestry, or the like.

3. *Equal rights statute.* LaCava next claims that the commission's actions denied him "equal rights" guaranteed to all citizens under G. L. c. 93, § 102.[9] We look to the cognate Federal provision for guidance. *Ellis* v. *Safety Ins. Co.*, 41 Mass. App. Ct. 630, 641-642 (1996). Only discrimination that is both purposeful and based on sex, race, color, creed or national origin comes within the reach of the statute; if any element is

[9]General Laws c. 93, § 102, as inserted by St. 1989, c. 332, provides, in pertinent part: "(*a*) All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, . . . to lease, sell, hold, and convey real and personal property . . . ."

missing, a claim under the statute fails. See *Dartmouth Review* v. *Dartmouth College*, 889 F.2d 13, 17 (1st Cir. 1989) (construing 42 U.S.C. § 1981). LaCava's complaint here again must fail. Even a generous reading of his complaint does not permit the possibility of his proving that the commission's action was based on sex, race, color, creed or national origin, or was purposefully discriminative.

4. *Certiorari.* Finally, LaCava's complaint alleges that the commission's action constitutes an abuse of discretion, and was arbitrary, capricious, and in excess of its authority. The allegation raises a claim for review of the commission's actions in the nature of certiorari under G. L. c. 249, § 4. This claim, too, must fail on a motion to dismiss. Judicial review here "is limited to correcting 'substantial errors of law that affect material rights and are apparent on the record.' " *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. 292, 297 (1990), quoting from *Debnam* v. *Belmont*, 388 Mass. 632, 635 (1983). "A decision is not arbitrary and capricious unless there is no ground which 'reasonable men might deem proper' to support it." *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. 124, 128-129 (1994), quoting from *Cotter* v. *Chelsea*, 329 Mass. 314, 318 (1952). We conclude that the complaint on its face, by alleging that the commission denied LaCava burial space in Woodside cemetery in order to save the family anguish, states facts with respect to the denial that reasonable persons might deem proper, and that any possibility of relief on this score is precluded. That the commission had the authority to determine who should be given space in the cemetery is obvious from the by-laws made a part of LaCava's pleading.

*Conclusion.* As we determine that the motion to dismiss was properly allowed, we need not reach the issue whether the commissioners might be individually liable, or the extent to which the town might be responsible for their action here.

*Judgment affirmed.*