NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

19-P-1521                                          Appeals Court

COMMONWEALTH  vs.  TARA MARTIN.

No. 19-P-1521.

Essex.       September 17, 2020. - October 29, 2020.

Present:  Green, C.J., Milkey, & Wendlandt, JJ.


Motor Vehicle, Leaving scene of accident, Investigation of
     accident, Operating under the influence.  Constitutional
     Law, Equal protection of laws.  Evidence, Expert opinion,
     Qualification of expert witness.  Words, "Caretaker."



     Complaints received and sworn to in the Lynn Division of
the District Court Department on October 30 and November 7,
2017.

     The case was tried before Matthew J. Nestor, J., and a
motion to revise and revoke sentence was heard by him.


     Joseph P. Dever for the defendant.
     Catherine L. Semel, Assistant District Attorney, for the
Commonwealth.


     WENDLANDT, J.  Enacted in 2018, as part of the

comprehensive Act Relative to Criminal Justice Reform, the

primary caretaker statute (caretaker statute), G. L. c. 279,

§ 6B, permits a judge to consider a defendant's status as the

primary caretaker of a dependent child when sentencing.  In this case, a District Court judge found that the defendant, Tara Martin, was the primary caretaker of her eight year old son, but denied the defendant's motion to revise and revoke her sentence because he concluded, sua sponte, that the caretaker statute violated the equal protection clause.  On appeal, the defendant contends this was error, and the Commonwealth agrees.  Because the caretaker statute burdens no fundamental right, applies no suspect classification, and is rationally related to the Commonwealth's legitimate interest in the care and protection of children, we agree.  Concluding that the defendant's other challenges lack merit, we remand for reconsideration of the defendant's motion.

Background.  On October 27, 2017, just after 7 P.M., the victim, Susan Testa, was found lying on the ground next to her vehicle on the dead-end street just outside her home in a thickly-settled residential neighborhood.  Blood oozed from her head and hand; there was blood and debris on the ground on the driver's side of Testa's vehicle, strands of Testa's hair hung from the driver's side mirror, which was cracked and pushed forward, and the body of the vehicle had sustained damage, including a dent and scratches on the driver's side.  Testa's last memory was seeing headlights coming around the corner, as she leaned against her vehicle.

Immediately after responding to the scene and approximately one-quarter mile away, on a street just off the one where Testa had lain injured, police officers found the defendant's vehicle parked "in an odd manner" far away from the curb adjacent to the defendant's home.  The vehicle was still warm, as if recently driven; it was dented and scratched on the passenger's side.  The gas cap door was ajar.  Blood, later determined to be from Testa, also was found on the vehicle.  The defendant, who was "slightly unsteady on her feet," came outside to speak with the officers who were examining her vehicle.  The officers asked if she had been out that evening, to which she responded, "Yes.  Is everyone okay?"  The defendant reported that she had been out at a social hall, where she had consumed two beers, and she had arrived home "not too long" before the officers arrived.

Trooper David Bergeron of the Massachusetts State Police collision analysis and reconstruction section assessed the scene and inspected both Testa's and the defendant's vehicles.  He observed the layout of the neighborhood, as well as road and lighting conditions as part of his collision investigation and reconstruction analysis.[1]  He created a computer-based forensic

---

[1] On cross-examination, Bergeron acknowledged that he did not use several other tools and methodologies that he had employed in connection with other accident reconstructions.

map based on his measurements at the scene.  Later, he drove the defendant's vehicle, concluding that it was operating normally.

Following a jury trial, the defendant was convicted of leaving the scene of property damage (leaving the scene).  G. L. c. 90, § 24 (2) (a).  She was acquitted of negligent operation of a motor vehicle under the influence of intoxicating liquor causing serious bodily injury (OUI-SBI).  G. L. c. 90, § 24L (1).[2]  The judge sentenced the defendant to "[t]wo years, six months to serve, balance suspended for two years.  No driving during the period of the suspended sentence."

Eleven days later, the defendant filed a motion to revise and revoke sentence, seeking consideration of her primary caretaker status under the caretaker statute.  See Mass. R. Crim. P. 29, as appearing in 474 Mass. 1503 (2016).  Following a hearing, the judge found that the defendant was the primary caretaker of her eight year old son.  However, he determined, sua sponte, that the caretaker statute violated the constitutional guarantee of equal protection, stating, "if you have a child, you don't go to jail.  But if you don't have a child, you do go to jail."  He denied the motion, but stayed the defendant's sentence pending appeal.

---

[2] Charges of operating under the influence of liquor and negligent operation of a motor vehicle were dismissed before trial.

Discussion.  1.  Caretaker statute.  The caretaker statute,

G. L. c. 279, § 6B (b), provides:

> "Unless a sentence of incarceration is required by law, the
> court may, upon conviction, consider the defendant's status
> as a primary caretaker of a dependent child before imposing
> a sentence."

We agree with the defendant and the Commonwealth that the

caretaker statute does not violate equal protection.  The

caretaker statute neither burdens a fundamental right[3] nor

employs a suspect classification;[4] accordingly, our equal

protection analysis is governed by the rational basis test

pursuant to which a statute is constitutional so long as it is

rationally related to a legitimate State interest.  See

Goodridge v. Department of Pub. Health, 440 Mass. 309, 330

(2003).

There can be no dispute that the Commonwealth has a

legitimate "interest in protecting the well-being of children."

---

[3] "Fundamental rights generally are those that stem
explicitly from or are implicitly guaranteed by the
Constitution."  LaCava v. Lucander, 58 Mass. App. Ct. 527, 533
(2003).  Although related to childrearing, the caretaker statute
does not burden the fundamental right to custody or control over
one's child.  See Youmans v. Ramos, 429 Mass. 774, 784 (1999)
("The liberty interest of a parent in his relationship with his
child is fundamental").

[4] The caretaker statute makes no distinction based on sex,
"race, religion, alienage, national origin and ancestry, [or]
certain quasi suspect classes, based on gender and [marital
status of one's parents]."  LaCava, 58 Mass. App. Ct. at 532.
See Commonwealth v. King, 374 Mass. 5, 20-21 (1977).

Matter of McCauley, 409 Mass. 134, 137 (1991). See Prince v. Massachusetts, 321 U.S. 158, 166 (1944) ("[S]tate as parens patriae" has a legitimate and compelling interest in "youth's well being"); Custody of a Minor, 375 Mass. 733, 737 (1978), quoting Wisconsin v. Yoder, 406 U.S. 205, 234 (1972) (recognizing State's interest in "health or safety" of children). Nor can there be any serious doubt but that dependent children can be negatively impacted by the incarceration of their primary caretakers. See generally Myers, Smarsh, Amlund-Hagen & Kennon, Children of Incarcerated Mothers, 8 J. Child & Fam. Stud. 11, 11 (1999) ("Children whose mothers are in prison or jail are among the riskiest of the high risk children in our nation. These children typically experience poverty, school problems, repeated shifting of households and caregivers, and the pain and disruption that accompany separation from the mother" [citations omitted]); Moretti & Peled, Adolescent-Parent Attachment: Bonds That Support Healthy Development, 9 Paediatrics & Child Health 551, 552-553 (2004) (discussing damaging effects to children where parent becomes unavailable). We have no trouble concluding that the caretaker statute (which permits a judge, when imposing a sentence, to examine whether a defendant is a primary caretaker for a dependent child and to consider sentencing alternatives to incarceration) is rationally related to that interest.

Accordingly, the caretaker statute passes muster under the rational basis test. See Goodridge, 440 Mass. at 330.

2. Sentencing. The defendant next contends that the judge sentenced her based on acquitted conduct, the OUI-SBI charge.[5] While "a sentencing judge may not undertake to punish the defendant for any conduct other than that for which the defendant stands convicted in the particular case," Commonwealth v. LeBlanc, 370 Mass. 217, 221 (1976), the judge here made no intimation that he was punishing the defendant for acquitted conduct. To the contrary, the judge stated,

> "There's not a chance in the world that I'm going to sentence her for OUI when the jury found her not guilty. . . . I want the record to be crystal clear. I'm not considering in any way, shape or form the fact that she was operating under the influence because as a matter of law now she wasn't."[6]

---

[5] The defendant grounds her argument in the statement of the prosecutor that, "given the facts of this case, the nature of the property damage and what it entailed," probation alone would be inappropriate.

[6] The defendant also has not met her heavy burden to show that the sentence, which fell within the statutory limit (and reduced her committed time to six months), was cruel and unusual. See Cepulonis v. Commonwealth, 384 Mass. 495, 497 (1981), quoting Commonwealth v. Jackson, 369 Mass. 904, 910 (1976) ("punishment must be so disproportionate to the crime that it 'shocks the conscience and offends fundamental notions of human dignity'"). See also Harding v. Commonwealth, 283 Mass. 369, 374 (1933) (sentence constitutional where it imposed "[n]o greater aggregate sentence . . . than was authorized" by Legislature).

On this record, we cannot reasonably conclude that the judge sentenced the defendant based on conduct for which she was acquitted.

3. Admissibility of expert testimony. On appeal, the defendant presses her preserved objection to Bergeron's opinion that "a reasonable motorist traveling through the neighborhood, [with a] high expectation that someone could be there, would have adjusted their driving behavior and [would] have been able to avoid this collision." Specifically, the defendant argues that Bergeron's testimony neither was based on any specialized knowledge and training nor developed through use of specialized tools. Judges have "broad discretion" (quotation omitted) in assessing expert testimony reliability, and to admit it where "'specialized knowledge would be helpful' to the jury." Commonwealth v. Holley, 476 Mass. 114, 125 (2016), quoting Commonwealth v. Pytou Heang, 458 Mass. 827, 844 (2011). Bergeron's training and experience were discussed in detail on direct examination.[7] He testified as to his investigative process. He examined the physical evidence by conducting a

_____

[7] In addition to his training, Bergeron testified that he had analyzed approximately one hundred collisions during his tenure as a State trooper. The defendant did not object to Bergeron's qualifications as an accident investigation and reconstruction expert, and (to the extent the defendant challenges those qualifications for the first time on appeal) we discern no error. See Commonwealth v. Fritz, 472 Mass. 341, 349 (2015).

walk-through of the scene. He conducted forensic mapping using surveying equipment and created a computer-based diagram of the accident scene. Bergeron explained his observations of the lighting conditions and other cars parked on the thickly-settled street the evening of the accident. He testified as to the speed limit on the road, and his observations that there were no defective road conditions that could have contributed to the accident. Following the accident, Bergeron tested the defendant's vehicle, which appeared to be functioning normally. On this record, the judge did not abuse his discretion in permitting the testimony.

Even assuming, arguendo, that Bergeron's testimony was erroneously admitted, it was not prejudicial. The testimony related to the negligence element of the OUI-SBI charge, of which the defendant was acquitted. See Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 923 (2004) (no prejudice where evidence erroneously admitted most directly related to acquitted conduct).[8]

4. Sufficiency of evidence. The defendant also challenges the sufficiency of the evidence that she knew she caused damage

_____

[8] Contrary to the defendant's contention, the judge was not required to instruct the jury regarding Bergeron's failure to conduct certain tests during his investigation. See Commonwealth v. Williams, 439 Mass. 678, 687 (2003).

to Testa's vehicle, an element of the crime of leaving the scene.[9] Viewed in the light most favorable to the Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), the evidence permitted the jury to find the requisite knowledge. Testa's injuries, the considerable damage on the driver's side of Testa's vehicle, Testa's hair found on the cracked and displaced driver's side mirror, the debris (including cracked coffee mug and cell phone) on the ground where Testa was found lying, the damage on the passenger's side of the defendant's vehicle, and Testa's blood on the defendant's vehicle were consistent with a collision. No stretch of the imagination is required to infer that the impact that caused this degree of damage resulted in noise and physical jostling of the vehicles. Moreover, the defendant's vehicle was found, parked in an odd manner in front of her home just a short while after the accident. When officers were examining her car, the defendant asked, "Is everyone okay?" Together, this evidence would permit the jury to infer reasonably that the defendant knew that she had caused damage to property.

---

[9] To support the conviction for leaving the scene, the Commonwealth had to prove beyond a reasonable doubt that the defendant, (1) while operating a motor vehicle on a public way, (2) caused damage to another person's property, and (3) knowing she caused such damage, (4) did not stop and make known her "name, residence and the register number of [her] motor vehicle." G. L. c. 90, § 24 (2) (a).

Conclusion.  The judgment is affirmed.[10]  We remand for reconsideration of the defendant's motion to revise and revoke consistent with this opinion.[11]

So ordered.

---

[10] To the extent the defendant's other arguments have not been explicitly addressed, "they 'have not been overlooked.  We find nothing in them that requires discussion.'" Commonwealth v. Brown, 479 Mass. 163, 168 n.3 (2018), quoting Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[11] On remand, the judge is instructed to make written findings as required by the caretaker statute.  G. L. c. 279, § 6B (b).